UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br><br> **Plaintiff,** <br><br> v. <br><br> **KEVONTAE STEWART,** <br><br> **Defendant.** | No. 25-mj-225 (ZMF) |

# ORDER

A federal grand jury refused to return an indictment in this case. *See* ECF 9. This was once unheard of, but has become common as of late.[1]

Typically, when a *federal* grand jury refuses to return an indictment in a case, either the government takes the message as a warning to go no further or, hopefully in only the rarest of cases, presents the indictment again to another *federal* grand jury.

To this judge's knowledge, what has never happened before is doing an end run around the federal grand jury completely. Yet that is what has happened today.

---

[1] Until last week, the Court was unaware that a form even existed for this filing. That is because prior to a month ago, there was never a need to repeatedly return no bill indictments. What has changed between now and then are the types of cases prosecutors are bringing brought to federal court—many with apparent Constitutional violations. *See, e.g.*, *United States v. Torez Riley*, 25-mj-154. Indeed, earlier this month, the government indicted a case via a federal grand jury months after prosecutors refused to formally charge it. At the detention hearing, the prosecutor admitted that the reason for the initial declination was the self-evident "Fourth Amendment issues." *See United States v. Richard Thompson*, 25-cr-271. Even there, the government followed longstanding norms and Rule 6 by taking its chances with a federal grand jury.

Today, prosecutors again presented a single count federal indictment against the defendant, but this time before a Superior Court grand jury. After receiving a true bill from that local grand jury, prosecutors sought to return the federal indictment in federal court. At a minimum, this is very unseemly; more than likely, it is unlawful. Not to mention, this only deepens the growing mistrust of the actions of prosecutors. That is a sentiment that was once unthinkable, but the irregular is now the regular. *See Fed. Educ. Ass'n v. Trump*, No. 25-1362, 2025 WL 2355747, at *11 (D.D.C. Aug. 14, 2025) (Judge Friedman, a renowned former prosecutor and judge, recently collected cases addressing this topic, and concluded that "[i]n just six months, the President of the United States may have forfeited the right to [] a presumption of regularity."). Prosecutors used to not look for loopholes. They sought justice and respected the decisions of juries, favorable or not.[2]

The preliminary hearing in this matter is set for October 9, 2025. Multiple federal grand juries sit between now and then.[3] Why not go back before one of those federal grand juries?

"Historically, [the grand jury] has been regarded as the primary security to the innocent against hasty, malicious and oppressive persecution; it serves the invaluable function in our society of standing between the accuser and the accused, whether the latter be an individual, minority group, or other, to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will." *Wood v. Georgia*, 370 U.S. 375, 390 (1962).

---

[2] Indeed, the ABA Model Code of Professional Responsibility EC 7-13 states that "[t]he responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict." It is particularly surprising that the government was willing to sacrifice its credibility for an indictment at any cost in a run-of-the-mill case such as this.

[3] At the hearing, the government noted that they previously relied on Superior Court grand juries to charge federal cases when federal grand juries were unavailable during the COVID-19 pandemic. This is a far cry from what happened today. Here, federal grand juries—plural—were available, unlike during COVID-19 when there were none at times. And in none of those cases had a federal grand jury already refused to return an indictment.

These words from the Supreme Court are haunting given what is before the Court today. The undersigned will not rubberstamp the breaking of decades-long norms and the rule of law. As such, the Court refused to take the grand jury return—another first in this District.

The parties are hereby ORDERED to provide briefing as to whether this Court has jurisdiction to return a federal indictment on only federal charges returned by a local grand jury. The government shall file its brief in support by October 3, 2025. Defense counsel shall file any objections by October 7, 2025.[4] The Court will hold a hearing on this matter on October 9, 2025, at 11:30 a.m.

Date: September 29, 2025

_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE

---

[4] Because this is a novel matter raising complex questions, the Court appoints the Federal Public Defender's Office, despite its already crushing caseload, to act as co-counsel in this matter.