# Judges Openly Doubt Government as Justice Dept. Misleads and Dodges Orders

Legal experts say the actions causing concern from the bench could have a more systemic effect, eroding the healthy functioning of the courts.

 Listen to this article · 7:31 min   Learn more

 By Alan Feuer

Aug. 4, 2025

Justice Department lawyers have long enjoyed a professional benefit when they appear in court. As a general rule, judges tend to take them at their word and assume they are telling the truth.

But in the past several months, as members of President Trump's Justice Department have repeatedly misled the courts, violated their orders and demonized judges who have ruled against them, some jurists have started to show an angry loss of faith in the people and the institution they once believed in most.

The dissolution of these traditional bonds of trust — known in legal circles as the presumption of regularity — goes well beyond judges' use of blunt words — "egregious," "brazen," "lawless" — to describe the various parts of Mr. Trump's power-grabbing policy agenda.

Ultimately, legal experts say, the actions that caused such doubts among judges about the department and those who represent it could have a more systemic effect and erode the healthy functioning of the courts.

10/3/25, 9:38 AM　Judges Openly Doubt Government as Justice Dept. Misleads and Dodges Orders - The New York Times

Case 1:25-mj-00225-ZMF   Document 16-3   Filed 10/03/25   Page 2 of 6

"I think people don't fully appreciate how much the ability of the legal system to work on a daily basis rests on the government's credibility," said Stephen I. Vladeck, a Georgetown University law professor. "Without that credibility, it's going to be harder for the government to do anything in court — even ordinary things. All of a sudden, you're going to have courts second-guessing things that they wouldn't have before."

While it is impossible to know for sure how deeply this distrust has set in among judges across the country, a number of judges in recent weeks have openly questioned the fundamental honesty and credibility of Justice Department lawyers in ways that would have been unthinkable only months ago.

In June, for instance, an order was unsealed in Federal District Court in Washington showing Magistrate Judge Zia M. Faruqui ripping into prosecutors after they tried to convince him that he needed to be "highly deferential" to their request to keep sealed a search warrant in an ordinary criminal case.

"Blind deference to the government?" Judge Faruqui wrote. "That is no longer a thing. Trust that has been earned over generations has been lost in weeks."

After all, as the judge pointed out, Justice Department lawyers under Mr. Trump have done much to destroy the confidence normally afforded them in court.

They have fired prosecutors who worked on Mr. Trump's two criminal cases, he said. They have attacked the charges brought against the rioters who stormed the Capitol on Jan. 6, 2021, as a witch hunt. And they have violated judicial orders in cases stemming from Mr. Trump's deportation policies and from his efforts to freeze federal grants.

"These norms being broken must have consequences," Judge Faruqui concluded. "High deference is out; trust but verify is in."

All of this echoed the explosive remarks made from the bench last month by Judge Paula Xinis, who lashed out at the Justice Department during a hearing in the case of Kilmar Armando Abrego Garcia, the immigrant wrongfully deported to El Salvador in March.

10/3/25, 9:38 AM	Judges Openly Doubt Government as Justice Dept. Misleads and Dodges Orders - The New York Times

Case 1:25-mj-00225-ZMF    Document 16-3    Filed 10/03/25    Page 3 of 6

Before the hearing, in Federal District Court in Maryland, Judge Xinis had spent weeks trying to get the department to comply with her orders in the case — and then to answer questions about why they had been flouted in the first place.

She finally lost all patience after some of the same lawyers failed to give her a straight answer about what the administration planned to do with Mr. Abrego Garcia after he was brought back from El Salvador to face criminal charges.

"This has been the process from Day 1," Judge Xinis told the lawyers. "You have taken the presumption of regularity and you've destroyed it in my view."

The Justice Department pushed back against such criticism in a statement issued on Monday.

"This Department of Justice makes no apologies for zealously advocating on behalf of the United States — especially to defend the policies and priorities that the American people have demanded," a department spokesman said.

Still, judges have also questioned the department's motives in a handful of politically sensitive cases that officials have sought to dismiss — sometimes against the will of the prosecutors working on them day-to-day.

In a sweeping opinion issued in April, Judge Dale E. Ho of Federal District Court in Manhattan rejected as false the reasons the department gave for dismissing bribery charges against Mayor Eric Adams of New York. While Judge Ho ultimately agreed to throw out the charges, he took a swipe at the department's credibility, saying it appeared as though officials had used their power in a quid pro quo with Mr. Adams to get him to support Mr. Trump's immigration crackdown in the city.

"Everything here smacks of a bargain," he wrote. "Dismissal of the indictment in exchange for immigration policy concessions."

Judge Dale E. Ho, shown in 2019, criticized the Justice Department's credibility after dismissing bribery charges against Mayor Eric Adams of New York. J. Scott Applewhite/Associated Press

In a similar fashion, a federal judge on Long Island refused last month to take the department's word after prosecutors asked her to dismiss an indictment against Vladimir Arévalo Chávez, a leader of the violent street gang MS-13, in preparation for sending him back to El Salvador.

Instead of simply accepting the government's assertion that the case against Mr. Arévalo Chávez needed to be tossed out because of "national security" concerns, the judge, Joan M. Azrack, ordered the government to tell her more about the politics behind the case. By that, she was referring to a deal reached between the Trump administration and President Nayib Bukele of El Salvador to hold immigrants deported from the United States in a Salvadoran prison in exchange for the return of MS-13 leaders in U.S. custody.

In yet another case, a judge in Los Angeles handling a request to drop fraud charges against Andrew Wiederhorn, a Trump donor and former chief executive of the restaurant chain Fatburger, asked the Justice Department to further outline its

reasons for wanting to do so. Late last week, the judge, R. Gary Klausner, said in an order that judges should "grant considerable deference to prosecutors" seeking to dismiss charges, but still insisted on an explanation for the dismissal by Friday.

Barbara L. McQuade, a former U.S. attorney in Detroit who teaches at the University of Michigan Law School, said that if judges continued to lose faith in the Justice Department, its lawyers would have to spend enormous time and energy backing up what are now considered to be routine courtroom assertions with witnesses or written submissions.

"If government lawyers have to prove up every statement they make at every level in every case every time they go to court, it would grind the justice system to a halt," she said.

Judges are not the only players in the legal system who have shown a measure of distrust in the Justice Department. In an almost unheard-of move, federal grand juries in Los Angeles have been refusing to indict many defendants whom prosecutors have sought to charge in connection with immigration protests, according to recent news reports.

That situation underscored how the courts can work successfully only if people outside of government — jurors and witnesses, for instance — believe that the Justice Department is acting honestly, said Daniel C. Richman, a law professor at Columbia who recently wrote in The New York Times about the "credibility crisis" the department is facing.

"When the government loses credibility, you see it clearly in the reactions of other players in the legal system," Mr. Richman said. "That's the road we're on for now — unless something changes soon."

Devlin Barrett contributed reporting.

*A correction was made on Aug. 5, 2025*: *An earlier version of this article misstated Andrew Wiederhorn's role with the restaurant chain Fatburger. He was previously a chief executive of the chain and founded its parent company. He did not create the restaurant chain.*

When we learn of a mistake, we acknowledge it with a correction. If you spot an error, please let us know at nytnews@nytimes.com.  Learn more

**Alan Feuer** covers extremism and political violence for The Times, focusing on the criminal cases involving the Jan. 6 attack on the Capitol and against former President Donald J. Trump.

A version of this article appears in print on , Section A, Page 1 of the New York edition with the headline: More Jurists Show Loss of Faith in Justice Dept.