**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| **v.** | ) | **No. 1:25-MJ-225 (ZMF)** |
| **KEVONTAE STEWART** | ) | |
| | ) | |

## RESPONSE TO ORDER OF THE COURT

Kevontae[1] Stewart, through undersigned counsel, responds to the order of the Court directing the parties to provide briefing as to whether this Court has jurisdiction to accept a federal indictment on only a federal charge returned by a Superior Court grand jury. The government has asserted that this Court must accept the indictment in this case because it is facially valid. That is incorrect. The indictment returned in this case is facially invalid under the Federal Rules of Criminal Procedure. This Court, therefore, cannot accept the indictment returned by the Superior Court grand jury.

### Factual & Procedural Background

On Friday, September 26, 2025, the United States Attorney's Office asked a grand jury of this Court to return an indictment against Mr. Stewart, asserting that he had unlawfully possessed a firearm in violation of 18 U.S.C. § 922(g)(1). This Court's grand jury declined. That day, the foreperson of this Court's grand jury appeared before Magistrate Judge Sharbaugh in open court to report that the grand jury had no billed Mr. Stewart's case. ECF No. 15 at 5. Judge Sharbaugh convened an emergency status hearing to inform defense counsel that the government had failed to obtain an indictment for Mr. Stewart. Upon defense counsel's request, Judge Sharbaugh

[1] The government misspells Mr. Stewart's first name in its emergency request. ECF No. 15. The correct spelling is Kevontae.

released Mr. Stewart and ordered the parties to reappear on Monday, September 29, 2025, at 12:30 PM to impose the conditions of Mr. Stewart's pretrial release. Mr. Stewart appeared before Judge Sharbaugh on September 29 and was sworn to his conditions of release. Under these conditions, Mr. Stewart must reside with his mother in North Carolina and is subject to a curfew from 10:00pm to 6:00am. ECF No. 11.

That same day, the government presented its case against Mr. Stewart to a grand jury convened by the Superior Court of the District of Columbia. ECF No. 15 at 5. The Superior Court grand jury returned an indictment against Mr. Stewart charging him with a violation of 18 U.S.C. § 922(g)(1). That afternoon—after Judge Sharbaugh had entered Mr. Stewart's conditions of pretrial release—the foreperson of the Superior Court grand jury appeared in this Court before Magistrate Judge Faruqui. The foreperson of the Superior Court grand jury presented the indictment returned against Mr. Stewart to Judge Faruqui. Judge Faruqui—confronted with the atypical situation of a Superior Court grand jury returning an indictment to him—was "concerned that it is unlawful" for him to accept an indictment from a Superior Court grand jury in federal court because "[n]o one has ever, after a no bill, gone to Superior Court and then brought a case here." Tr. at 4, 8. Judge Faruqui then set a briefing schedule on the issue ordering the government to file authority in support of its position by October 3, 2025. In that same order, Judge Faruqui also appointed the Office of the Federal Public Defender as co-counsel for Mr. Stewart for the purpose of responding to the government's position on this issue.

Three days later, on October 2, 2025, the government filed an emergency motion with the Chief Judge of the District Court. ECF No. 15. In its emergency motion, the government asked Chief Judge Boasberg to vacate Judge Faruqui's briefing schedule, order Judge Faruqui to accept the indictment, and to enter specific language in its order which could be conveyed to the Superior

Court grand jury. Chief Judge Boasberg convened a hearing on October 3, 2025, to address the government's emergency motion. Mr. Stewart's counsel from the Office of the Federal Public Defender was present for the hearing.

At the hearing, Chief Judge Boasberg heard argument from both the government and Mr. Stewart as to whether there was any emergency which would justify vacating Judge Faruqui's briefing schedule. After hearing from both parties, Chief Judge Boasberg concluded that there was no emergency justifying the government's request and denied the government's emergency motion without prejudice. Chief Judge Boasberg made plain that should either party disagree with Judge Faruqui's eventual ruling, that party could appeal Judge Faruqui's decision to him or the assigned district court judge—the typical course of conduct in this Court.

That evening, the government filed its response to Judge Faruqui's order calling for briefing on whether he is permitted to accept an indictment returned by a Superior Court grand jury. ECF No. 17. The government's response stated that this Court should accept the indictment "[f]or the reasons set out in the Government's" emergency motion. The response also stated that: "The D.C. Circuit held in *United States v. Seals*, 130 F.3d 451 (D.C. Cir. 1997), that pursuant to D.C. Code § 11-1916 a Superior Court grand jury is empowered to return an indictment to this Court. This Court must accept the returned indictment." ECF No. 17.

**Argument**

The government argues that D.C. Code § 11-1916(a) requires the Court to accept the indictment returned against Mr. Stewart by the Superior Court grand jury. The government's argument, however, fails to consider the Federal Rules of Criminal Procedure which govern all federal criminal proceedings, including this one in this Court. The Federal Rules mandate that a criminal case may only be initiated by a grand jury convened by a federal judge returning an

indictment against the criminal defendant. The Superior Court grand jury, however, was not convened by a federal judge and its indictment is, therefore, facially invalid. The Court cannot accept this indictment.[2]

**I. A Judge May Not Accept an Indictment that is Invalid on its Face.**

Contrary to the government's assertion, neither a United States District Court Judge nor a United States Magistrate Judge may accept an indictment that is invalid on its face.

The government appears to claim that this Court has no authority to not accept an indictment. Indeed, at the emergency hearing before Chief Judge Boasberg on October 3, 2025, the government asserted that even if an indictment was plainly facially invalid—such as if it was returned to a magistrate judge by a grand juror who was neither the foreperson nor the deputy foreperson in violation of Rule 6—the magistrate judge would have no authority to reject the indictment and must accept it regardless. Under the government's reasoning, a United States Magistrate Judge is no more than a mailbox for indictments to be dropped by grand jurors. This is not so.

A judge of this Court has no obligation to accept an indictment that is facially invalid. The government's cited authority is not to the contrary. *See* ECF No. 15 at 10 n.7. The Supreme Court has said that "an indictment returned by a legally constituted nonbiased grand jury, like an information drawn by a prosecutor, *if valid on its face*, is enough to call for a trial of the charge on the merits and satisfies the requirements of the Fifth Amendment." *Lawn v. United States*, 355 U.S. 339, 349 (1958) (emphasis added); *see also Costello v. United States*, 350 U.S. 359, 363 (1956) ("An indictment returned by a *legally constituted* and unbiased grand jury, like an

[2] Much of the government's emergency motion consisted of *ad hominem* attacks on this Court. Chief Judge Boasberg expressed his disapproval of such attacks at the hearing before him, and, therefore, this response does not address them.

information drawn by the prosecutor, *if valid on its face*, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more.") (emphasis added). Both of these cases require that an indictment be valid on its face before a judge is required to accept it. This implies an obligation on the part of the Court to ensure that an indictment is facially valid. The logical corollary, then, is that where an indictment is not valid on its face, this Court cannot accept an indictment presented to it.

**II. The Indictment Returned Against Mr. Stewart is Facially Invalid and Must be Rejected.**

**A. The Federal Rules of Criminal Procedure Require that an Indictment be Returned by a Federal Grand Jury**

The Federal Rules of Criminal Procedure "govern the procedure in all criminal proceedings in the United States district courts, the United States courts of appeals, and the Supreme Court of the United States." Fed. R. Crim. P. 1(a)(1).

Rule 6, in turn, governs the grand jury. "When the public interest so requires, the court must order that one or more grand juries be summoned." Fed. R. Crim. P. 6(a)(1). "The court," then "will appoint one juror as the foreperson and another as the deputy foreperson." *Id.* 6(c). Proceedings before the grand jury are generally confidential, but "[t]he court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter" for various reasons. *Id.* 6(b)(2)(E).

"A grand jury may indict only if at least 12 jurors concur. The grand jury—or its foreperson or deputy foreperson—must return the indictment to a magistrate judge in open court." Fed. R. Crim. P. 6(f). "If a complaint or information is pending against the defendant and 12 jurors do not concur in the indictment, the foreperson must properly and in writing report the lack of concurrence to the magistrate judge." *Id.*

"A grand jury must serve until the court discharges it, but it may serve more than 18 months only if the court, having determined that an extension is in the public interest, extends the grand jury's service." Fed. R. Crim. P. 6(g). "An extension may be granted for no more than 6 months, except as otherwise provided by statute." *Id.* Individual grand jurors may be excused by "the court" either temporarily or permanently. *Id.* 6(h). If a grand juror is excused permanently, "the court may impanel an alternate juror in place of the excused juror." *Id.*

**B. A Superior Court Judge May Not Summon a Grand Jury Which Can Return an Indictment to Initiate a Federal Criminal Case.**

Rule 6 makes clear, then, that "the court" is integral to the grand jury's functioning. "The court" summons the grand jury. "The court" appoints a foreperson and deputy foreperson. "The court" decides when to disclose grand jury matters to the public. "The court" may excuse grand jurors. And "the court" can replace excused grand jurors. The Federal Rules, however, define "the court" to exclude the local District of Columbia courts and their judges. A Superior Court grand jury, therefore, cannot return an indictment in compliance with Rule 6.

The Federal Rules' definition of "court" is plain. Rule 1 defines "court" as "a federal judge performing functions authorized by law." Fed. R. Crim. P. 1(b)(2). The Rules, in turn, define "federal judge," to mean "a justice or judge of the United States as these terms are defined 28 U.S.C. § 451"; "a magistrate judge"; and "a judge confirmed by the United States Senate and empowered by statute in any commonwealth, territory, or possession to perform a function to which a particular rule relates." Fed. R. Crim. P. 1(b)(3). The Rules then make it clear that the term "federal judge" "does not include local judges in the District of Columbia." Fed. R. Crim. P. 1 Advisory Committee Notes-2002 Amendment.

The Court cannot accept the Superior Court indictment returned against Mr. Stewart because it is facially invalid.[3] The face of the Indictment makes plain to this Court that it was returned by a Superior Court grand jury. A Superior Court grand jury is not convened by "the court," *i.e.*, a "federal judge," as required by the Rules 1 and 6. The indictment is, therefore, facially invalid. The Court's analysis should end here.

Indeed, jurors in the Superior Court, both grand and petit jurors, are not summoned by a federal judge but instead are summoned according to the D.C. Code. "At such times as are determined under the jury system plan, the Court shall summon or cause to be summoned from among qualified individuals under section 11-1906 sufficient prospective jurors to fulfill requirements for petit and grand jurors for the Court." D.C. Code § 11-1907. The definition of "the court" under the D.C. Code does not align with the definition of "the court" in the Federal Rules of Criminal Procedure. Under the D.C. Code, "the court" refers to "the Superior Court of the District of Columbia and may include any judge of the Court acting in an official capacity." D.C. Code § 11-1902(4).

The differences between this Court's juries and those of the Superior Court support Mr. Stewart's argument that he cannot be indicted on federal charges by a Superior Court grand jury. The juries of this Court and the Superior Court are not identical or managed identically. Congress created the Superior Court and the D.C. Court of Appeals in 1970 through the District of Columbia Court Reform and Criminal Procedure Act. Pub. L. No. 91-358, 84 Stat. 480 (July 29, 1970). When the Superior Court was first created, the Superior Court juries were summoned by this Court. 132 Cong. Rec. S15070-01 (Oct. 3, 1986) ("Under current law, the Federal district court for the District of Columbia is charged with running a single jury selection system for both the local and

[3] The indictment returned by the Superior Court grand jury has not been placed on the docket, so defense counsel is not aware of the specific wording of the indictment in this case.

Federal Courts.”). Congress changed this in 1986 with the District of Columbia Judicial Efficiency and Improvement Act. “This bill … cut the ties that binds the local court to the Federal Court.” *Id.* As enacted, a “jury system [was] hereby established for the Superior Court of the District of Columbia.” D.C. Code § 11-1901.

And although this Court and the Superior Court both summon jurors from residents of the District of Columbia, they do not do so in the same way. *Compare* Jury Selection Plan for the Random Selection of Grand and Petit Jurors, United States District Court for the district of Columbia (As amended May 17, 2022), https://www.dcd.uscourts.gov/sites/dcd/files/D.D.C.JurySelectionPlan-20220517.pdf, *with* Jury Plan for the Superior Court of the District of Columbia (May 28, 2020), https://www.dccourts.gov/sites/default/files/Jury-Plan-2019-Effective-May-2020.pdf. This Court creates its master juror list by obtaining names of D.C. residents from the D.C. Board of Elections, the D.C. Department of Motor Vehicles, and the D.C. Department of Finance and Revenue. The Superior Court, on the other hand, creates its master list from those three sources *and* the list of individuals who have qualified to receive any type of public assistance benefits in the District of Columbia, the list of persons who have become naturalized citizens in the District of Columbia, and “such other source lists as may become available.” Superior Court Jury Plan at 1-2. This Court then requires that all duplicates be excluded from the master list. D.D.C. Jury Plan at 2. The Superior Court jury plan does not include a requirement to exclude duplicates.

The Superior Court and this Court also exclude different classes of citizens from participating on juries. This Court excludes only 5 classes of citizens from participating on juries: non-citizens, those unable to read, write, and understand English, those unable to speak English, those incapable to render satisfactory service, and those charged or convicted of a felony who have

not had their rights restored. D.D.C. Jury Plan at 4. The Superior Court, however, excludes those charged with misdemeanor offenses as well, and automatically requalifies those committed of felonies to serve on juries one year after completing their sentence. Superior Court Jury Plan at 4.

The indictment returned against Mr. Stewart must be rejected because it is facially invalid under the Federal Rules of Criminal Procedure.

**II. The Government's Cited Authority is Not to the Contrary**

The government relies on a D.C. Code provision and a 1997 case from the D.C. Circuit to support presenting a purely federal case to the Superior Court grand jury. Neither can override the Congressionally enacted Federal Rules of Criminal Procedure.

The government first relies on D.C. Code § 11-1916(a) to justify its decision to take a federal case to the Superior Court grand jury. Section 1916(a) of the D.C. Code[4] provides that a "grand jury serving in the District of Columbia may take cognizance of all matters brought before it regardless of whether an indictment is returnable in the Federal or District of Columbia courts." The government interprets this provision as permitting the U.S. Attorney's Office to present federal charges to the Superior Court grand jury and return the indictment to a federal magistrate judge under any circumstances. That is a stretch.

First, the term "take cognizance of all matters" is anything but clear. Cognizance means "knowledge" or "comprehension by understanding." *Cognizance*, Webster's Second New Int'l Dictionary 520 (2d ed. 1961). Nothing about the term "cognizance" clearly delegates the authority to return an indictment to a different court than the one which summoned the grand jury. If Congress had intended for this provision to mean that a Superior Court grand jury could return an indictment in federal court, it was certainly capable of saying so. The government's interpretation

[4] The current version of this provision of the D.C. Code was enacted by Congress, not the D.C. Council, in the District of Columbia Judicial Efficiency and Improvement Act. Pub. L. No. 99-650, § 2, 100 Stat. 3635 (Nov. 14, 1986).

begs the question why Congress would enact a bill creating two separate jury systems in the District of Columbia, but then permit the grand jury in one system to interfere with another. If anything, the ability of a Superior Court grand jury to "take cognizance" of a matter more naturally relates to a grand jury's investigatory function. By enacting § 11-1916(a), Congress was clarifying that a Superior Court grand jury may investigate all matters in the District, regardless of where any crime may eventually be charged.

Second, even if Congress was granting the authority to return an indictment to federal court to a Superior Court grand jury, that authority is still trumped by the Federal Rules of Criminal Procedure. Congress initially enacted this provision in 1970 when it first created the local District of Columbia Courts. Pub. L. No. 91-358, 84 Stat. 515 (July 29, 1970). In the system enacted in 1970, the juries of the federal courts and the Superior court were much more intertwined. At that time, "[j]urors serving within the District of Columbia [had] the same qualifications as provided for jurors in the Federal courts," and "[t]here [was] a single system in the District of Columbia for the selection of jurors for both Federal and District of Columbia courts." *Id.* That "selection system [was] prescribed by Federal law and executed in accordance therewith as provided by the United States District Court for the District of Columbia." *Id.*

In 1986, Congress elected to create two separate jury selection systems in the District of Columbia—one for federal court and one for the Superior Court. Pub. L. No. 99-650, 100 Stat. 3635 (Nov. 14, 1986); D.C. Code § 11-1901. Qualification for serving as a juror in Superior Court was no longer tied to eligibility to serve as a juror in federal court. D.C. Code. 11-1906. The 1986 Congressional amendments to the D.C. jury systems remain in effect today.

On the other hand, Congress has amended the Federal Rules of Criminal Procedure many times since 1986. Congress enacted the amendments to the Federal Rules of Criminal Procedure

which defined "court" and "federal judge" in 2002. This later in time amendment (long after 1986) shows that even if § 11-1916 does authorize a Superior Court grand jury to present an indictment to a federal magistrate judge, Federal Rules of Criminal Procedure 6 and 1 now make such an indictment facially invalid.

Moreover, the D.C. Code speaks to how the juries of this Court and the Superior Court can interact. At D.C. Code § 11-1917, Congress laid out the "coordination and cooperation of the courts." This section provides that to "the extent feasible, the Superior Court and the United States District Court shall consider the respective needs of each court in the qualification, selection, and service of jurors. Nothing in this chapter shall be construed to prevent such courts from entering into any agreement for sharing resources and facilities (including automated data processing hardware and software, forms, postage, and other resources)." D.C. Code § 11-1917. Clearly Congress intended to limit the interactions between the two jury systems to sharing administrative systems if necessary. Had Congress intended for the two courts to coordinate by sharing a grand jury, it surely would have said so in this provision.

The government's reliance on the D.C. Circuit's opinion in *United States v. Seals*, 130 F.3d 451 (D.C. Cir. 1997) fares no better. In *Seals*, the court was presented with an indictment originally returned by a Superior Court grand jury, not after a federal grand jury refused to indict, as in Mr. Stewart's case. *Id.* at 453. Defendants were convicted after a jury trial of conspiracy, kidnapping and extortion. *Id.* On appeal, defendants argued that § 11-1916(a) "is unconstitutional because it vests the judicial power of the United States outside of Article III and it does so by improperly empowering the executive." *Id.* at 455-56. The court rejected these constitutional arguments. The *Seals* court, however, was never called to pass upon the question of whether the language of § 11-1916(a) authorized a Superior Court grand jury to return an indictment in federal court pursuant to

Rule 6. This, therefore, remains an open question. And, like the provision itself, the decision in *Seals* was issued in 1997—5 years before the Supreme Court and Congress revised the Federal Rules of Criminal Procedure to exclude District of Columbia judges from summoning a grand jury which could return an indictment in federal court. *Seals*, therefore, does not control here.

Moreover, one of the primary rationales for the decision in *Seals* is no longer in effect. The court devoted much attention to the fact that grand juries in both courts were selected from identical pools and by "identical method[s]." *Id.* at 460. As discussed above, that is no longer true.

In addition, in what can only be characterized as a dramatic overstatement, the government claims that "the U.S. Attorney's Office has used Superior Court juries to return federal indictments for decades." ECF No. 15 at 1. For this proposition, the government cites three cases—*Seals* and two other cases—one from 2018 and one from 2024. ECF No. 15 at 8-9. In neither of the two cases was any objection apparently raised. The government's attempt to use a Superior Court grand jury to return this indictment after a properly constituted federal grand jury declined to do so was highly irregular and must be rejected. Indeed, the government did not dispute Judge Faruqui's statement that no one had ever gone to a Superior Court grand jury to obtain an indictment on a federal charge that a federal grand jury had declined.

**Conclusion**

The Federal Rules of Criminal Procedure do not permit a grand jury summoned by the Superior Court of the District of Columbia to return an indictment in federal court. This makes the indictment returned against Mr. Stewart facially invalid and the Court, therefore, has no authority to accept the indictment returned in this case.

Respectfully Submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_________________
MICHELLE M. PETERSON
MATTHEW L. FARLEY
Assistant Federal Public Defenders
625 Indiana Ave., N.W.
Washington, D.C. 20004
(202) 208-7500