UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES,**<br><br>**Plaintiff,**<br><br>v.<br><br>**KEVONTAE STEWART,**<br><br>**Defendant.** | No. 25-mj-0225 |

# ORDER

Between the year 2005[1] and today, over 5,000 indictments were returned in the United States District Court for the District of Columbia. Last week, the government attempted—for the first time ever—to return an indictment from a D.C. Superior Court grand jury after a federal grand jury previously refused to indict. This unprecedented workaround to the normal federal grand jury process immediately raised serious questions about the legality of the government's conduct. Nevertheless, the government demanded that this Court accept its extraordinarily unusual indictment without any further scrutiny, insisting not only that the indictment was lawful but that this Court lacked the power to even consider its legality. But this Court is bound to apply the Federal Rules of Criminal Procedure, and the Rules do not permit this Court—much less require it—to approve of the facially invalid grand jury indictment that the government has proffered.

---

[1] In 2005, the clerk's office began keeping files electronically, making that an easy point of reference for data collection.

I.      BACKGROUND

On September 18, 2025, the government filed a criminal complaint against Mr. Kevontae Stewart alleging that he had unlawfully possessed a firearm in violation of 18 U.S.C. § 922(g)(1). *See* Complaint, ECF No. 1. On Friday, September 26, 2025, this Court's grand jury declined to return an indictment against Mr. Stewart. *See* Report of Grand Jury, ECF No. 9. That afternoon, the Court held an emergency hearing to address Mr. Stewart's continued detention given the grand jury no-bill. *See* Docket, September 26, 2025, hearing before Judge Sharbaugh.

At the emergency hearing, Mr. Stewart moved to dismiss the case against him and again asserted his right to a preliminary hearing.[2] *Id.* The Court declined to dismiss the case at that juncture but noted that the preliminary hearing scheduled for September 30, 2025 would proceed given the grand jury's refusal to vote in favor of indicting the case. *Id.*

On September 29, 2025, the government attempted to return an indictment charging Mr. Stewart with a single federal count violation based on a D.C. Superior Court grand jury's vote to return an indictment. The undersigned, doubting that it would be lawful to accept an indictment from a D.C. Superior Court grand jury, ordered briefing on the matter from the government and appointed the Office of the Federal Public Defender as co-counsel for Mr. Stewart.

---

[2] Separately, this Court recognizes that there is an alternative basis under which this indictment could be invalidated. While prosecutors enjoy broad discretion in charging decisions, "the doctrine [of prosecutorial vindictiveness] precludes action by a prosecutor that is designed to penalize a defendant for invoking any legally protected right available to [him] during a criminal prosecution." *United States v. Meadows*, 867 F.3d 1305, 1311 (D.C. Cir. 2017). "[E]vidence sufficient to establish a realistic likelihood of vindictiveness" raises a presumption that the government must rebut. *Meadows*, 867 F.3d at 1311.

The government's insistence on securing an indictment by any means necessary in response to Mr. Stewart exercising his right to a preliminary hearing and moving to dismiss his case following the grand jury no-bill is arguably enough to raise such a presumption. *See, e.g.*, *United States v. Terrell*, 220 F. Supp. 3d 952, 946 (N.D. Iowa 2016) (finding vindictive prosecution where the government refused to give the defendant "an opportunity to continue cooperating" because he "insisted on going forward with [his] preliminary and detention hearing").

2

II.  DISCUSSION

A.  **The Court's Power**

An indictment that is substantively deficient is "a legal nullity." *See, e.g., United States v. Alcorta*, 145 F. Supp. 3d 357, 362 (M.D. Pa. 2015) (holding that an indictment form that used a different name than the person the government accused was a substantive error that rendered the indictment "a legal nullity"); *United States v. Daniels,* 973 F.2d 272, 274 (4th Cir. 1992) (finding that an indictment that fails to "include every essential element of the charged offense" is "fatally defective"). The Supreme Court has held time and again that an indictment must be "valid on its face" and "returned by a legally constituted nonbiased grand jury" for the case to proceed. *Costello v. United States*, 350 U.S. 359, 363 (1956); *see also Lawn v. United States*, 355 U.S. 339, 349 (1958).

It is well within a magistrate judge's discretion to refuse a facially invalid indictment. "[T]he responsibility for issuing subpoenas and for accepting returned indictments is vested in United States magistrate judges." *United States v. Seals*, 130 F.3d 451, 457 (D.C. Cir. 1997) (citing Fed. R. Crim. P. 6(e)(4) & 6(f)). Indeed, "supervisory responsibilities [over a grand jury] are often discharged by a magistrate judge[, not a district judge]." *Id.* at 459. Such supervisory responsibility is limited to "curb[ing] federal prosecutorial abuses," *id.* at 458, and ensuring that facially invalid indictments are not returned, *see Lawn*, 355 U.S. at 349.

The government insists that this Court has no power to refuse even a facially invalid indictment. *See* October 3, 2025, Emergency Hearing Tr. at 5:5–12 (Q: Are you saying [the magistrate judge] would have to accept that indictment even if it were flawed or even if it were improperly presented? A: I believe so, your honor). The government is wrong. First, it cites no authority for this proposition. Second, this proposition contravenes both the well-established procedures surrounding grand jury indictments and common sense. The government's position

3

would obligate this Court to accept any and all indictment documents the government thrusts before it, including: an indictment returned by a state-court grand jury from Maryland; an indictment that omits the name of the defendant or the charges against them; an indictment charging offenses that the government did not present to a grand jury; an indictment charging statutory violations no longer in effect; an indictment where there was not a quorum of grand jurors; etc. This Court's statutorily created responsibility supervising the grand jury process and the orderly administration of justice forbids that outlandish result.

It should come as no surprise to the government that this Court serves as more than a mere rubber stamp on grand jury returns. Indeed, just last week, the undersigned refused a facially invalid indictment because the government failed to present a charge to the grand jury, as reflected in the poll sheet, that was in its indictment. The government acknowledged the error and informed the undersigned that they would resubmit their indictment at a later date.

The government's view begs the question of why Congress involved magistrate judges in the grand jury return process at all. Congress could have made returns automatic upon a vote by the grand jury. The grand jury would then give the indictment to the Clerk's office to be docketed. In this world, the only check against invalid indictments being returned would be upon a motion from the defendant to dismiss the indictment. The presiding district judge would then dismiss the indictment. Beyond not being what Congress intended, "this is an astonishingly callous argument which ignores the obvious. For a wrongful indictment is no laughing matter; often it works a grievous, irreparable injury to the person indicted. The stigma cannot be easily erased." *In re Fried*, 161 F.2d 453, 458 (2d Cir. 1947); *see also United States v. Search of L. Off., Residence, & Storage Unit Alan Brown*, 341 F.3d 404, 415 (5th Cir. 2003) (quoting *In re Fried)*.

The government's insistence that no mechanism prevents the acceptance of an invalid indictment also ignores the harm all defendants face from being booked and processed upon the return of an indictment. Not to mention, that law enforcement arrests many defendants upon the return of an indictment. "Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." *United States v. Marion*, 404 U.S. 307, 320 (1971). The "time spent in jail awaiting trial has a detrimental impact on the individual" and "[i]mposing those consequences on anyone who has not yet been convicted is serious. It is especially unfortunate to impose them on those persons who" were wrongly charged to begin with. *Barker v. Wingo*, 407 U.S. 514, 532. This harm also extends to defendants already detained on other charges: "while it might be argued that a person already in prison would be less likely than others to be affected by 'anxiety and concern accompanying public accusation,' there is reason to believe that an outstanding untried charge (of which even a convict may, of course, be innocent) can have fully as depressive an effect upon a prisoner as upon a person who is at large." *United States v. Brown*, 520 F.2d 1106, 1112 (D.C. Cir. 1975). And even defendants already on pre-trial release are at risk from indictment returns. A returned indictment presents a renewed opportunity to detain such defendants, just as the government could do here to Mr. Stewart.

**B.     The Requirement of a Federal Grand Jury**

The Federal Rules of Criminal Procedure have "the force of law," *United States v. Robertson*, 55 F.R.D. 13, 14 (D.D.C. 1972), and "govern the procedure in all criminal proceedings in the United States district courts." Fed. R. Crim. P. 1(a)(1). A United States magistrate judge is bound by the "powers and duties conferred or imposed" by these Rules. 28 U.S.C. Code § 636

5

("Each United States magistrate judge serving under this chapter shall have . . . all powers and duties conferred or imposed upon United States commissioners by law or by the Rules of Criminal Procedure for the United States District Courts.").

The Rules limit the Court's power to accept indictments. Rule 6 governs the grand jury. It provides that "the court" must order the grand jury to be summoned, appoint the foreperson and deputy foreperson, and perform other tasks related to the continued operation of the grand jury. *See* Fed. R. Crim. P. 6(a), 6(c), 6(g), 6(h). The Rules define "court" as "a federal judge." Fed. R. Crim. P. 1(2). The Rules, in turn, define "federal judge" to mean (A) "a justice or judge of the United States as these terms are defined 28 U.S.C. § 451"; (B) "a magistrate judge"; or (C) "a judge confirmed by the United States Senate and empowered by statute in any commonwealth, territory, or possession to perform a function to which a particular rule relates." Fed. R. Crim. P. 1(b)(3)(A)–(C). Judges from D.C. Superior Court do not satisfy any of these three definitions.

First, let's address Rule 1(b)(3)(A): under 28 U.S.C. § 451, "judge" includes "judges of the courts of appeals, district courts, Court of International Trade and any court created by Act of Congress, the judges of which are entitled to hold office during good behavior." 28 U.S.C. § 451. "Justice" is defined as "the Chief Justice of the United States and the associate justices of the Supreme Court." *Id.* While an act of Congress created the D.C. Superior Court, its judges are not entitled to hold office with life tenure (i.e., "good behavior"). *See* D.C. Code § 1–204.31(c) (Superior Court Associate Judges are appointed for a term of fifteen years). Thus, D.C. Superior Court Associate judges are not "judges" within the meaning of Rule 1(b)(3)(A).

Next up, Fed. R. Crim. P. 1(b)(3)(B): Rule 1 defines "magistrate judge" as a "United States Magistrate Judge as defined in 28 U.S.C. §§ 631–639." Fed. R. Crim. P. 1(b)(5). Section 631 provides that a "United States magistrate judge" is one that is appointed by "the judges of each

United States district." *Id*. Unlike United States magistrate judges, D.C. Superior Court magistrate judges are appointed by the chief judge of D.C. Superior Court. *See* D.C. Code § 11–1732(a). Thus, D.C. Superior Court magistrate judges are not "judges" within the meaning of Rule 1(b)(3)(B).

Finally, Fed. R. Crim. P. 1(b)(3)(C): Although D.C. Superior Court judges are confirmed by the United States Senate, the District of Columbia is a federal district and not a commonwealth, territory, or possession as the Rule requires. "Currently, two United States insular areas are commonwealths, the Northern Mariana Islands and Puerto Rico" and "only one [territory] exists currently, Palmyra Atoll." U.S. Dep't of the Interior, Definitions of Insular Area Political Organizations, https://perma.cc/62YD-32FR (last visited Oct. 8, 2025). "Possession" refers to the same land areas encompassed by the phrase "territory" *See id.* (explaining that while "it still appears in Federal statutes and regulations, possession is no longer current colloquial usage.").

Further, within the same section of definitions in Rule 1, "State" is defined as: "the District of Columbia, and any commonwealth, territory, or possession of the United States."[3] Fed. R. Crim. P. 1(b)(9). By excluding the District of Columbia in Rule 1(b)(3)(C), but including it in Rule 1(b)(9), we can safely conclude that the District of Columbia is not a "commonwealth, territory, or possession." Otherwise, Congress would not have set it apart from the other three terms in Rule 1(b)(9). To find otherwise would imply that Congress's words are not carefully chosen to make meaningful distinctions. *See N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 302 (2017) ("If a sign at the entrance to a zoo says 'come see the elephant, lion, hippo, and giraffe,' and a

---

[3] The fact that this inclusion and exclusion is within the same statute demonstrates that Congress necessarily considered this distinction. *See Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1014 (6th Cir. 1997) (quoting *Kurinsky v. United States*, 33 F.3d 594, 597 (6th Cir.1994) ("The doctrine of noscitur a sociis instructs that 'a . . . term is interpreted within the context of the accompanying words 'to avoid the giving of unintended breadth to the Acts of Congress.'").

temporary sign is added saying 'the giraffe is sick,' you would reasonably assume that the others are in good health.") (internal quotations and citations omitted). Further substantiating this reading, Rule 1(10)(B) defines a "State or local judicial officer" as "a judicial officer empowered by statute in the District of Columbia or in any commonwealth, territory, or possession to perform a function to which a particular rule relates." Congress yet again set the District of Columbia apart from "any commonwealth, territory, or possession." Moreover, Rule 1(10)(B) necessarily excludes D.C. Superior Court judges from the definition of a "federal judge" by instead categorizing them as a "State or local judicial officer." Thus, D.C. Superior Court judges are not federal judges within the meaning of Rule 1(b)(3)(C).

The final nail in the coffin is the advisory committee notes to Rule 1. The notes expressly clarify that the term "federal judge" "does not include local judges in the District of Columbia." Fed. R. Crim. P. 1 Advisory Committee Notes-2002 Amendment. Because Rule 6 is explicit that a grand jury must be summoned by a federal judge, as that term is defined in Rule 1, there is no plausible reading of the Rules that would allow for a grand jury summoned by a D.C. Superior Court judge to return federal charges in federal court.

### C. The Federal Rules Supersede the D.C. Code

The government argues that D.C. Code § 11-1916 empowers a D.C. Superior Court grand jury to return federal indictments in federal court. But this provision of the D.C. Code cannot modify federal court procedural rules, nor can it expand the powers conferred upon federal magistrate judges or override the grand jury procedures expressly set forth in the Federal Rules that require indictments to be issued by a grand jury summoned by the federal court.

"[T]he D.C. Circuit has repeatedly held that a single set of procedural rules—the rules that govern federal courts—apply with respect to the federal court's adjudication of alleged criminal

8

violations[.]" *United States v. Greene*, 516 F. Supp. 3d 1, 15 (D.D.C. 2021). In *Greene*, the court considered what procedural rules apply when a defendant is accused of D.C. Code violations in federal court. Specifically, what happened when the relevant D.C. Code provision and federal statute imposed differing obligations. Despite the existence of both provisions, the Court applied the federal statute. *See id.* Thus, Rule 6 governs federal court grand jury procedure, not the arguably conflicting provisions of D.C. Code § 11-1916.

Courts in this District and the D.C. Circuit have consistently reaffirmed this principle. *See, e.g.*, *United States v. Hammond*, No. 02-cr-294, 2020 WL 1891980, at *7 (D.D.C. Apr. 16, 2020) (holding that federal court must apply federal sentencing code rather than D.C. sentencing code when defendant was charged with D.C. Code violations in federal court); *see also United States v. Brown*, 483 F.2d 1314, 1318 (D.C. Cir. 1973) (holding that federal court must apply federal bail provision rather than D.C. Code bail provision because defendant was prosecuted in federal court despite only being convicted of D.C. Code violations); *United States v. Belt*, 514 F.2d 837, 843 (D.C. Cir. 1975) (holding that, where a defendant is tried for local and federal offenses in district court, "the federal forum's evidentiary law" governs because it "is patently not feasible for the [court] to try [such] a defendant" under two sets of evidentiary rules).

Further, if this Court were to "accept the government's contention that the local provision[] do[es] apply" then "defendants in the federal courts of this jurisdiction would be treated more harshly than defendant's in any other federal court[.]"*Brown*, 483 F.2d at 1318. The D.C. Circuit has made clear that such disparate treatment of D.C. defendants within the federal judicial system cannot be tolerated. *Id.* Specifically, subjecting federal defendants in Washington, D.C., to both federal grand jury proceedings and (at the government's whim) to Superior Court grand jury proceedings would unfairly place them in greater legal jeopardy. There are substantive differences

9

between the two grand jury systems. One example is the different selection criteria for potential jurors. *See* Def. Resp., ECF No. 21 at 7–9. Another difference is the term and substance of what D.C. Superior Court grand juries see. D.C. Superior Court grand juries sit for 25 days and generally see a huge volume of arrest-generated cases. These cases often involve a single witness testifying before the grand jury. In contrast, the federal grand jury sits for a year, yet hears far fewer cases. And these cases allege violations of generally more complex federal crimes that are often the subject of lengthy investigations for which multiple witnesses would testify. Arguably, the lower volume of cases gives the federal grand jurors additional time to pressure test the government's case. The unprecedented number of recent federal grand jury rejections—a trend that appears to be spreading as most recently seen in Chicago—reflects that federal grand juries want more than the government is offering. So, there may be a nominal risk that a D.C. Superior Court grand jury is a more receptive audience for charging federal offenses than a federal grand jury. Indeed, a federal grand jury said no here, and then a Superior Court grand jury said yes. *Brown* necessitates a reading of the rules that forecloses any chance that this harsher standard would apply to a federal D.C. defendant. 483 F.2d at 1318.

The government argues that this interpretation of the Federal Rules renders D.C. Code § 11–1916 out of existence. Not so. It is permissible under both the Federal Rules and D.C. Code § 11–1916 for a *federal* grand jury to return an indictment being prosecuted in *D.C. Superior Court*. The D.C. Circuit has held this much to be true. *See Hackney v. United States*, 389 A.2d 1336, 1339 (D.C. 1978) (holding that D.C. Code § 11–1916 permits the United States District Court grand jury to return an indictment in D.C. Superior Court).

But speaking of reading out of existence: the government's take on D.C. Code § 11–1916 allows for entirely eliminating the federal grand jury process for Washington, D.C. Under their

view, the government could take all federal indictments to D.C. Superior Court without any limitations. That outcome is something to be especially vigilant against given the recent struggles of the government to bend federal grand juries to the government's will. *See, e.g.*, *United States v. Beidleman*, No. 25-cr-270, 2025 WL 2803850, at *1 (D.D.C. Oct. 1, 2025) (collecting many of the cases where there have been no true bills).

### D. The Government's Reliance on *Seals* is Misplaced

No case has considered the question of whether the Federal Rules authorize a federal magistrate judge to accept an indictment from a D.C. Superior Court. Not *Seals*, nor the other five cases the government cites in its reply. The only question presented in *Seals* was whether such a procedure would be *constitutionally* permitted under separation-of-powers principles and the Fifth Amendment. *Seals* is silent on whether the D.C. Code provision the government relies upon can effectively rewrite the grand jury procedures that are set forth in the Federal Rules.

Importantly, the 2002 amendment to the Rule 1—which expressly excludes D.C. Superior Court judges in the Advisory Committee Notes—came *years after* both the enactment of D.C. Code § 11-1916 and the decision in *Seals*. *See* supra at II(B). Thus, Rules 1 and 6 dictate the outcome here.

### III.   CONCLUSION

      This litigation and the delay caused by it could have been avoided if the government had simply gone to one of the other federal grand juries. That escape hatch remains open today. At any time, the government can short circuit this dispute by taking their federal charge before a federal grand jury. The question then is why are they *now* afraid to do so?

Date: October 9, 2025

                                              ZIA M. FARUQUI
                                              UNITED STATES MAGISTRATE JUDGE