UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KEVONTE STEWART,<br>Defendant. | Case No. 1:25-MJ-225 |

### REQUEST FOR REVIEW OF JUDGE FARUQUI'S ORDER REFUSING TO ACCEPT A GRAND JURY RETURN

The United States of America respectfully requests that the Chief Judge, for the reasons described below and in its other briefing in this case, ECF 15, 16, 17, 23, vacate Magistrate Judge Zia M. Faruqui's order, ECF 24, in which he refused to accept the indictment a Superior Court grand jury voted to return in this case. This Court should also, on or before October 21, 2025, issue an order directing Judge Faruqui to accept the indictment at a hearing on October 22, 2025, which is the last day on which the Superior Court grand jury is in session.

As set forth below, the Congress, in D.C. Code § 11-1916, gave the Superior Court grand jury jurisdiction to return the indictment. The D.C. Circuit recognized this jurisdiction in *United States v. Seals*, 130 F.3d 451 (D.C. Cir. 1997), which remains binding precedent for this Court.

## I. BACKGROUND

*A. Judge Faruqui found probable cause for the federal charge,
but a District Court grand jury did not concur in the indictment.*

On September 18, 2025, Judge Faruqui issued the criminal complaint in this case, finding that there was probable cause to believe that the defendant unlawfully

Page 1 of 17

possessed a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1). ECF 1. The same day, the defendant appeared before Judge Faruqui for his initial appearance. The next day, September 19, 2025, Magistrate Judge Matthew J. Sharbaugh ordered the defendant detained, finding him to be a danger to the community, and set a preliminary hearing in this matter for Tuesday, September 30, 2025, at 9:30 AM.

On Friday, September 26, 2025, Grand Jury 25-3 in the United States District Court declined to return an indictment charging the defendant with the violation of 18 U.S.C. § 922(g)(1). ECF 9. The same day, the foreperson appeared in court before Judge Sharbaugh to report the lack of concurrence pursuant to rule 6(f) of the Federal Rules of Criminal Procedure. And then Judge Sharbaugh held an emergency status hearing and released the defendant at defense counsel's request. In light of the defendant's release, the government requested that the preliminary hearing be moved from September 30, 2025, at 9:30 AM, to October 8 or 9, 2025. *See* Fed. R. Crim. P. 5.1(c). The Court declined to do so at that time, but set a hearing on Monday, September 29, 2025, at 12:30 PM, to swear the defendant into release conditions and consider the government's request to continue the preliminary hearing.

*B. A Superior Court grand jury voted to return an indictment.*

Because no grand jury was sitting in the federal courthouse on September 29, 2025—the only intervening court day before the scheduled preliminary hearing—the government determined to seek an indictment from the Superior Court grand jury pursuant to D.C. Code § 11-1916, which was available at approximately 1:15 PM on Monday, September 29. Thus, on Friday, September 26, the government contacted the clerk's office and Judge Faruqui's chambers, advising that it expected to present

the case to a grand jury empaneled in the Superior Court for the District of Columbia and requested that the court prepare to receive an indictment if one were returned. The government cited D.C. Code § 11-1916 as the basis for its request.

Given the conflicting timing on Monday, one AUSA appeared at the 12:30 PM hearing in the federal courthouse and another appeared in the Superior Court grand jury, located at 601 D Street NW, at 1:15 PM. By 2:00 PM, the Superior Court grand jury, which had been empaneled on September 4, voted to return the indictment. After the Superior Court grand jury voted to return the indictment, the AUSA who appeared in the Superior Court grand jury learned that the preliminary hearing—which had been scheduled for the next morning—was continued.

### C. Judge Faruqui refused to accept the indictment the Superior Court grand jury voted to return.

That same afternoon, the government appeared before Judge Faruqui with the foreperson to return the indictment. During the hearing, the AUSA presented the legal authority for the Superior Court grand jury to return the indictment, including D.C. Code § 11-1916, *United States v. Seals*, 130 F.3d 451 (D.C. Cir. 1997), *United States v. Brown*, No. 07-75, 2007 WL 2007513 (D.D.C. July 9, 2007), *United States v. Allen*, 729 F. Supp. 120 (D.D.C. 1989), and the federal indictment returned to this Court by a Superior Court grand jury in *United States v. Clark*, 18-cr-338 (D.D.C. Nov. 15, 2018). Transcript, *United States v. Stewart*, 25-mj-225 (D.D.C. Sept. 29, 2025), at 2–4. After taking a recess to consider the legal authorities presented by the United States, Judge Faruqui resumed the bench and declined to accept the return.

He then appointed the Federal Public Defender's Office as "co-counsel in this matter" and ordered adversarial briefing on the matter. ECF 12.

Thereafter, the United States filed an emergency request for review before the Chief Judge. ECF 15. The Chief Judge held a hearing on October 3, 2025, at which time he ruled that the motion for review was premature. The government again presented its arguments to the magistrate judge, ECF 17, and the defendant filed a response on October 7, 2025, ECF 21. The government filed a reply brief on October 8, 2025. ECF 23.

During the hearing on October 9, 2025, Judge Faruqui declined to hear argument and then announced that he would not accept the indictment for reasons he would state is a written opinion. Later that day, Judge Faruqui issued a written opinion with two principal holdings: (1) that a magistrate judge has the authority to determine whether the indictment was valid,[1] and (2) that this Court is duty bound to ignore D.C. Code § 11-1916 because of the 2002 amendment to rule 1 of the Federal Rules of Criminal Procedure. ECF 24.

In his written order, Judge Faruqui reasons that D.C. Code § 11-1916 has been superseded by the Federal Rules of Criminal Procedure, ECF 24 at 8–11, because

---

[1] As set forth in prior briefing, ECF 15, 17, 23, which is incorporated herein, Judge Faruqui effectively dismissed the instant indictment before it was even filed, acting beyond his authority as a magistrate judge and usurping the power to "dismiss or quash an indictment" and make other dispositive rulings that is reserved to District Judges by Article III of the U.S. Constitution, 28 U.S.C. § 636, and rule 12 of the Federal Rules of Criminal Procedure. *See also United States v. Raddatz*, 447 U.S. 667, 681 (1980); *Gonzalez v. United States*, 553 U.S. 242, 245 (2008). But assuming *arguendo* that a magistrate judge does have such power, Judge Faruqui's reasoning on the merits is erroneous and must be overturned.

section 1916 is a matter of local procedure—akin to sentencing or bail procedures—that federal courts must ignore. *Id.* at 8–9 (citing *United States v. Greene*, 516 F. Supp. 3d 1, 15 (D.D.C. 2021)). Judge Faruqui reasons further that allowing a Superior Court grand jury to return an indictment on federal charges would unfairly prejudice defendants given the "nominal risk that a D.C. Superior Court grand jury is a more receptive audience for charging federal offenses" because Superior Court grand jurors do not have as much time to "pressure test the government's case." *Id.* at 10. Thus, Judge Faruqui found it necessary to adopt "a reading of the rules that forecloses any chance" of this risk for federal defendants. *Id.*

Under Judge Faruqui's reading of the Federal Rules of Criminal Procedure, the rules "limit the Court's power to accept indictments." *Id.* at 6. Judge Faruqui's reasoning proceeds as follows: Rule 6(a)(1) requires that "[w]hen the public interest so requires, the *court* must order that one or more grand juries be summoned." Fed. R. Crim. P. 6(a)(1) (emphasis added). Rule 6(c) provides that "[t]he *court* will appoint one juror as the foreperson and another as the deputy foreperson." Fed. R. Crim. P. 6(c) (emphasis added). And the word *court* in the Federal Rules of Criminal Procedure includes the U.S. District Court for the District of Columbia but not the Superior Court for the District of Columbia. *Id.* 6–8. Thus, Judge Faruqui concludes, this Court must refuse to accept an indictment from a Superior Court grand jury that has "take[n] cognizance of [a] matter[] brought before it regardless of whether an indictment is returnable in the Federal or District of Columbia courts" pursuant to D.C. Code § 11-1916.

## II. ARGUMENT

*A. This Court has authority to review Judge Faruqui's order.*

The Rules of the United States District Court for the District of Columbia delineate the role of the Chief Judge in reviewing decisions of the magistrate judges and handling matters related to the grand jury. Local rule 57.14(b) states that "one of the duties of the Chief Judge is to empanel the grand jury and hear and determine all matters relating to proceedings before the grand jury." D.D.C. Ct. R. 57.14(b). It also assigns to the Chief Judge the duty to "hear and determine requests for review of rulings by magistrate judges in criminal matters not already assigned to a district judge." *Id.* at 57.14(e). Here, because the magistrate judge has issued an order and the underlying matter is not already assigned to a district judge, the Chief Judge should review it. Moreover, since the order directly implicates the grand jury's functioning, the Chief Judge is within his authority to "determine all matters relating to proceedings before the grand jury." *Id.* at 57.14(b).

*B. This Court must give full effect to D.C. Code § 11-1916,*
*harmonizing it with the Federal Rules of Criminal Procedure.*

The Supreme Court has instructed that "[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one." *Morton v. Mancari*, 417 U.S. 535, 550–51 (1974). "[W]hen Congress has focused on a particular subject, a court can reasonably rely on that expression of congressional intent, by contrast with a generally worded statute where it is unclear whether Congress focused on the particular matter at issue." *United States v. Stewart*, 104

F.3d 1377, 1387 (D.C. Cir. 1997) (citing *D. Ginsberg & Sons, Inc. v. Popkin*, 285 U.S. 204, 208 (1932)).

Moreover, "repeals by implications are not favored,' and are a 'rarity.' Presented with two statutes, the Court will 'regard each as effective'—unless Congress' intention to repeal is 'clear and manifest," or the two laws are 'irreconcilable.'" *Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1323 (2020) (internal citations omitted). A party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing "a clearly expressed congressional intention" that such a result should follow. *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 533 (1995). Courts indulge a "stron[g] presum[ption]' that repeals by implication are 'disfavored' and that 'Congress will specifically address' preexisting law when it wishes to suspend its normal operations in a later statute." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018) (quoting *United States v. Fausto*, 484 U.S. 439, 452, 453 (1988)).

Here, D.C. Code § 11-1916 is a specific statute enacted by Congress that is part of a comprehensive act to "constitute [a] Tribunal[] inferior to the supreme Court" within in the District of Columbia—a place over which the Congress has unique power to "exercise exclusive Legislation in all Cases whatsoever." U.S. Const. Art. I § 8. Under D.C. Code § 11-1916, a Superior Court grand jury—like a District Court grand jury—may "take *cognizance* of all matters brought before it regardless of whether an indictment is returnable in the Federal or District of Columbia courts," D.C. Code § 11-1916 (emphasis added). The word *cognizance* means "(1) The right and

power to try and determine cases; jurisdiction." *Cognizance*, BLACK'S LAW DICTIONARY (2nd Ed. 2001). Additionally, in the next section, the Congress mandated the following: "To the extent feasible, the Superior Court and the United States District Court shall consider the respective needs of each court in the qualification, selection, and service of jurors." D.C. Code § 11-1917. Thus, the Congress specifically directed the Superior Court to consider the needs of the District Court when supervising the operation of Superior Court grand juries.

In *United States v. Seals*, 130 F.3d 451 (D.C. Cir. 1997), the D.C. Circuit held that D.C. Code § 11-1916 means what it says: a Superior Court grand jury has the jurisdiction to return an indictment to the District Court. Likewise, based on the plain language of section 11-1916, the D.C. Court of Appeals held that a District Court grand jury had jurisdiction to return an indictment to the Superior Court. *Hackney v. United States*, 389 A.2d 1336, 1338–39 (D.C. 1978). In other words, the appellate courts to consider this statute have both concluded that the Congress gave all grand juries in the District of Columbia uniquely broad jurisdiction over both federal and local matters. Courts "normally assume that, when Congress enacts statutes, it is aware of relevant judicial precedent." *Ryan v. Gonzales*, 568 U.S. 57, 66 (2013) (quoting *Merck & Co. v. Reynolds*, 559 U.S. 633, 646-47 (2010)). Thus, at the time of the 2002 amendments to the Federal Rules, Congress was aware of the binding precedent that clearly authorized the coextensive jurisdiction of District Court and Superior Court grand juries in the District of Columbia.

In contrast, the Federal Rules of Criminal Procedure have general application to all federal courts throughout the republic and do not reveal a Congressional intent to supersede or repeal D.C. Code § 11-1916. To begin, there is nothing in the 2002 amendments to the rules that demonstrate that the Congress was "focused on the particular matter at issue" here: whether Superior Court grand juries were empowered to return federal indictments. Indeed, the Advisory Committee Notes for the 2002 amendments provide the following: "The language of Rule 6 has been amended as part of the general restyling of the Criminal Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic, except as noted below." The notes that follow do not mention anything about the provisions in subsection (a) and (f), which deal with the convening of grand juries and the return of indictments by grand juries. Indeed, none of the provisions or advisory notes of rule 6 make any mention of the District of Columbia or the Superior Court. And there is no definition in rule 1 for the term grand jury that by its terms excludes Superior Court grand juries. Bottom line: there is nothing to suggest the 2002 amendments to the Federal Rules of Criminal Procedure were intended to address the unique role that grand juries in the District of Columbia have to consider federal and local criminal charges.

Next, the text of rule 6 is not restrictive. Put another way, the rule states what this Court must do, not what the Superior Court cannot do. Rule 6(a) provides that "the court must order that one or more grand juries be summoned." But by requiring this Court to summon a grand jury, the rule by its own language does not exclude the

Superior Court from doing the same. Likewise, rule 6(f) provides the following: "A grand jury may indict only if at least 12 jurors concur. The grand jury—or its foreperson or deputy foreperson—must return the indictment to a magistrate judge in open court." But there is nothing in the text of that provision, or the definitions in rule 1, that requires the grand jury in question to have been summoned by this Court pursuant to rule 6(a). Simply put, there is nothing in the text of rule 6 that is necessarily irreconcilable with Superior Court grand juries exercising the coextensive jurisdiction granted by D.C. Code § 11-1916.

In the context of appropriations, the D.C. Circuit has held "it seems barely necessary to repeat the frequently stated and eminently sound maxim that the policy against repeals by implication is of particular force when the purported repealer takes the form of an appropriations enactment." *Demby v. Schweiker*, 671 F.2d 507, 512 (D.C. Cir. 1981). Much like an appropriations enactment, a stylistic change to the Federal Rules of Criminal Procedure should not be considered a conscious repeal of D.C. Code § 11-1916. As stated in *Demby*, "It is difficult to imagine that any member of Congress . . . would consider that he was voting for the repeal" of section 11-1916 by not objecting to the proposed rule changes in 2002. *Id.* Indeed, "[t]he conventional way to signal that one statutory provision is intended to override conflicting provisions is the construction, "Notwithstanding any other provision of law." *P.J.E.S. by & through Escobar Francisco*, 502 F. Supp. at 541 (D.D.C. 2020) (citing *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993)).

In the absence of any explicit reference to D.C. Code § 11-1916, this Court is bound to apply the Supreme Court's strong presumption against repeal by implication and read the Federal Rules of Criminal Procedure in a way that harmonizes them with D.C. Code § 11-1916. A harmonious reading is readily available: Under rule 6(a), "[w]hen the public interest so requires, [this] court must order that one or more grand juries be summoned." Likewise, under D.C. Code § 11-1907 the Superior Court shall summon grand juries. And pursuant to D.C. Code § 11-1916 and rule 6(f), "[a] grand jury," whether summoned by this court or the Superior Court, "may indict only if at least 12 jurors concur." If any grand jury in the District of Columbia votes to return an indictment to this Court pursuant to D.C. Code § 11-1916, then the "grand jury—or its foreperson or deputy foreperson—must return the indictment to a magistrate judge in open court" pursuant to rule 6(f). Under this harmonious reading of the rules and the D.C. Code, this Court should accept the indictment the Superior Court grand jury voted to return.

*C. This Court is bound by the D.C. Circuit's opinion in* Seals.

Next, Magistrate and District Courts, "like panels of [the D.C. Circuit], are obligated to follow controlling circuit precedent until either [the Circuit], sitting en banc, or the Supreme Court, overrule[s] it." *Brookens v. Acosta*, 297 F. Supp. 3d 40, 47 (D.D.C. 2018), *aff'd sub nom. Brookens v. Dep't of Lab.*, No. 18-5129, 2018 WL 5118489 (D.C. Cir. Sept. 19, 2018); *see also Harris v. Bessent*, No. 25-5037, 2025 WL 1021435, at *1 (D.C. Cir. Apr. 7, 2025). This Court is duty bound to follow the holding in *Seals* unless and until the Circuit reverses course.

In *United States v. Seals*, 130 F.3d 451 (D.C. Cir. 1997), the D.C. Circuit held that section 11-1916 permitted a Superior Court grand jury to return an indictment to this Court. In that case, the United States secured an indictment alleging violations of federal law before a grand jury empaneled in the Superior Court. *See* Indictment, *United States v. Seals*, No. 95-cr-284 (D.D.C. Oct. 31, 1995), ECF 1. The defendant moved to dismiss the indictment on the basis that section 11-1916 was unconstitutional and that it "deprive[d] them of the constitutional safeguards associated with Article III supervision of federally-indicting grand juries." *Seals*, 130 F.3d at 456 n.3. The D.C. Circuit rejected this argument. The court acknowledged that "section 1916(a) is applicable only to the unique federal enclave." *Id.* at 457 (internal quotation marks omitted). But the court reasoned that "the power to supervise a federally-competent grand jury cannot fairly be described as an essential attribute of the judicial power of the United States." *Id.* at 459 (internal quotation marks omitted). The court concluded, "While the grand jury arrangement in the District of Columbia may be unique, 'our constitutional principles of separated powers are not violated . . . by mere anomaly or innovation.'" *Id.* at 460 (quoting *Mistretta v. United States*, 488 U.S. 361, 385 (1989)).

Additionally, more recent caselaw has suggested that the 2002 amendment to rule 1 of the Federal Rules of Criminal Procedure has not abrogated section 11-1916 or *Seals*. In 2007, this Court addressed *Seals* when determining whether a Superior Court grand jury was a "Federal grand jury" as that term is used in 18 U.S.C. § 1515(a)(1) when the grand jury was investigating only a potential D.C. Code violation.

*United States v. Brown*, No. 07-cr-75 CKK, 2007 WL 2007513, at *4 (D.D.C. July 9, 2007). District Judge Kollar-Kotelly cited *Seals* as settled law, noting that the D.C. Circuit had referred to a "Superior Court grand jury as a '*federally competent* grand jury,' . . . in a case in which a D.C. Superior Court grand jury returned an indictment in the United States District Court for the District of Columbia on federal charges." *Id.* (citing *Seals*, 130 F.3d at 457). Ultimately, however, Judge Kollar-Kotelly concluded—"based on the facts in this case"—that because "the D.C. Superior Court grand jury charged with investigating the murder . . . served only in a local capacity in its investigation of a locally-defined crime, . . . Defendants did not allegedly obstruct a 'Federal grand jury'" in violation of 18 U.S.C. § 1512(c)(2). *Brown*, 2007 WL 2007513, at *5.

If Judge Kollar-Kotelly had concluded that *Seals* was no longer good law or that D.C. Code § 11-1916 had been repealed by the 2002 amendments to the Federal Rules of Criminal Procedure, the analysis would not have turned on "the facts in [that] case." Instead, Judge Kollar-Kotelly would have simply reasoned that grand jury proceedings in Superior Court never could be considered "official proceedings" under federal law. The court did not do that.[2]

---

[2] Judge Faruqui reasons that defendants in the District of Columbia face greater jeopardy because District Court or Superior Court grand juries may return a federal indictment. ECF 24 at 9. This is incorrect. Defendants in other federal districts face the prospect of state and federal indictments without the same double jeopardy protections that D.C. defendants enjoy. *United States v. Mills*, 964 F.2d 1186, 1193 (D.C. Cir. 1992); *Robertson,* 810 F.2d at 257; *United States v. Alston,* 609 F.2d 531, 537 n. 31 (D.C.Cir.1979) (dicta); *Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); *Bartkus v. Illinois,* 359 U.S. 121, 132–33, 79 S.Ct. 676, 682–83, 3 L.Ed.2d 684 (1959)).

Finally, if the 2002 amendment to the Federal Rules of Criminal Procedure abrogated *Seals*, this issue would have been discovered and litigated at some point during the nearly twenty-three years between the 2002 amendments and this case. As set forth in the examples cited below, multiple judges of this Court have presided over cases based on indictments returned by Superior Court grand juries:

| Case Name | Case Number | Date | Lead Charge | District Judge |
|---|---|---|---|---|
| *United States v. Seals* | 95-cr-284 | Oct. 31, 1995 | 18 U.S.C. § 371 | Lamberth |
| *United States v. Doostdar* | 18-cr-255 | Aug. 20, 2018 | 18 U.S.C. § 371 | Friedman |
| *United States v. Clark* | 18-cr-338 | Nov. 15, 2018 | 18 U.S.C. § 922(g)(3) | Kelly |
| *United States v. Wallace* | 19-cr-151 | May 6, 2019 | 18 U.S.C. § 844(i) | Hogan |
| *United States v. Carter* | 20-cr-5 | Jan. 6, 2020 | 18 U.S.C. § 922(g)(1) | Bates |
| *United States v. Monroe* | 24-cr-321 | July 15, 2024 | 18 U.S.C. § 922(g)(1) | Cobb |

*D. The U.S. Attorney had prosecutorial discretion to present this matter to a Superior Court grand jury.*

The Executive branch enjoys the authority to submit charges to a new grand jury after another grand jury has refused to approve an indictment. *United States v. Williams*, 504 U.S. 36, 49 (1992) (citing *Ex parte United States*, 287 U.S. 241, 250–251 (1932)); *In re U.S.,* 441 F.3d 44, 63 (1st Cir. 2006) ("As one commentator has noted, '[t]he longstanding federal rule is that resubmissions [of an indictment after one grand jury refuses to indict] are permissible, without court approval, even when the prosecutor presents no additional evidence to the second grand jury.' 4 LaFave et al., *Criminal Procedure* § 15.2(h), at 284–85 (2d ed. 1999).") "Incidental to the

functions confided in Article II is 'the power to perform them, without obstruction or impediment.'" *Trump v. Vance*, 591 U.S. 786, 810 (2020) (citation and quotation omitted).

The Supreme Court has held that a U.S. Attorney is empowered to "present[] to one grand jury charges which a previous grand jury has ignored." *See United States v. Thompson*, 251 U.S. 407, 414–15 (1920).[3] In considering whether a court could require judicial approval before a U.S. Attorney presented charges to a second grand jury, the Supreme Court held that such action "is so incompatible with the general principles governing the subject as to cause it to be, in substance, . . . a mere disregard or repudiation of the principles themselves." *Id.* at 414. In reaching this conclusion, the Supreme Court noted that the improper "exercise of judicial discretion" in controlling grand jury presentations would "destroy[]" the "right of the grand jury to consider" cases and U.S. Attorney's "coterminous" authority to present them. *Id.* at 415.[4]

---

[3] The Supreme Court in *Thompson* also found fault with a lower court's dismissal of an indictment because "comprehensively considering the subject, the assertion of the judicial discretion which was the basis of the judgment below is incompatible with the spirit and purpose underlying the admitted principles as to the power of grand juries, and the right of the government to initiate prosecutions for crime, since in the case stated such powers are controlled, not by a rule of law, but depend upon a mere exercise of judicial discretion." *Id.*

[4] *See also United States v. Pabian*, 704 F.2d 1533, 1537 (11th Cir. 1983) ("The decision to resubmit is a matter of prosecutorial discretion not generally subject to judicial scrutiny.") (citing, inter alia, *United States v. Batchelder*, 442 U.S. 114, 124 (1979)).

To the extent that Judge Faruqui suggests that the indictment could be rejected for prosecutorial vindictiveness, this serious allegation is not founded in law. Judge Faruqui cites *United States v. Meadows* as a basis that such conduct was at play in this case. ECF 24 at 2. But "[a]s an initial matter, the Supreme Court has expressed doubt that in the run-of-the-mill pretrial situation, the prosecutor would have any reason to engage in vindictive behavior; the Court noted that defendants routinely assert procedural rights prior to trial and that prosecutors are unlikely to respond vindictively to this everyday practice." *United States v. Meadows*, 867 F.3d 1305, 1312 (D.C. Cir. 2017). In this very young case, nothing has been asserted other than procedural rights. It is also worth noting that the government only sought indictment on the charge already listed in the complaint—the same charge for which Judge Faruqui found probable cause. And the government sought to return the indictment from the Superior Court grand jury because that was the only grand jury available before the preliminary hearing. Thus, to the extent that any conceivable "presumption" of vindictiveness might exist, the record here absolutely rebuts it.

## III. CONCLUSION

Accordingly, this Court should vacate Judge Faruqui's order and, on or before October 21, 2025, issue an order directing Judge Faruqui to accept the indictment at a hearing on October 22, 2025.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

 */s/Jonathan R. Hornok*
JONATHAN R. HORNOK
Assistant United States Attorney
Chief of the Criminal Division