# IN THE UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | No. 1:25-MJ-225 (ZMF) |
| KEVONTAE STEWART | ) | |
| | ) | |

## RESPONSE TO GOVERNMENT'S REQUEST FOR REVIEW

Kevontae[1] Stewart, through undersigned counsel, responds to the government's request for review of Judge Faruqui's order declining to accept a grand jury return. ECF No. 25. On October 9, 2025, Judge Faruqui concluded that the indictment in this case returned to him by a grand jury of the D.C. Superior Court was facially invalid and refused to accept it. He issued a written order to that effect the same day. ECF No. 24. Judge Faruqui's decision was correct. This Court, therefore, should also refuse to accept the indictment returned by a Superior Court grand jury.

---

[1] The government has now misspelled Mr. Stewart's first name three times in its case captions. Two of these misspellings were apparently intentional, as they occurred after Mr. Stewart informed government counsel of the proper spelling of Mr. Stewart's name. The correct spelling of Mr. Stewart's first name is "Kevontae."

1

## **Factual and Procedural Background**

On Friday, September 26, 2025, the United States Attorney's Office asked a grand jury of this Court to return an indictment against Mr. Stewart, alleging that he had unlawfully possessed a firearm in violation of 18 U.S.C. § 922(g)(1). This Court's grand jury declined to do so. That day, the foreperson of this Court's grand jury appeared in open court before Magistrate Judge Sharbaugh to report that the grand jury had no-billed Mr. Stewart's case. ECF No. 15 at 5. Judge Sharbaugh convened an emergency status hearing to inform defense counsel that the government had failed to obtain an indictment for Mr. Stewart. Upon defense counsel's request, Judge Sharbaugh released Mr. Stewart and ordered the parties to reappear on Monday, September 29, 2025, at 12:30 p.m. to impose the conditions of Mr. Stewart's pretrial release. Mr. Stewart appeared before Judge Sharbaugh on September 29 and was sworn to his conditions of release. At that time, Mr. Stewart's preliminary hearing was scheduled for the next day, September 30, 2025.

That same day, the government presented its case against Mr. Stewart to a grand jury convened by the Superior Court of the District of Columbia. ECF No. 15 at 5. Only now does the government provide an explanation for *why* it chose to present Mr. Stewart's case to a Superior Court grand jury. The government now asserts that it presented Mr. Stewart's case to the Superior Court grand jury because

2

"no grand jury was sitting in the federal courthouse on September 29, 2025—the only intervening court day before the scheduled preliminary hearing."  ECF No. 25 at 2.  That Superior Court grand jury returned an indictment against Mr. Stewart charging him with a violation of 18 U.S.C. § 922(g)(1).

That afternoon—after Judge Sharbaugh had entered Mr. Stewart's conditions of pretrial release—the foreperson of the Superior Court grand jury appeared before Magistrate Judge Faruqui.  The foreperson of the Superior Court grand jury presented the indictment returned against Mr. Stewart to Judge Faruqui.  Judge Faruqui—confronted with the atypical situation of a Superior Court grand jury returning an indictment to him—was "concerned that it is unlawful" for him to accept an indictment from a Superior Court grand jury in federal court because "[n]o one has ever, after a no bill, gone to Superior Court and then brought a case here." ECF No. 16-1 at 4, 8.

Judge Faruqui then set a briefing schedule on the issue ordering the government to file authority in support of its position by October 3, 2025.  In that same order, Judge Faruqui also appointed the Office of the Federal Public Defender as co-counsel for Mr. Stewart for the purpose of responding to the government's position on this issue.  Three days later, on October 2, 2025, the government filed an emergency motion asking this Court to vacate Judge Faruqui's briefing schedule.

3

ECF No. 15.  This Court convened a hearing on Friday October 3, 2025, and concluded that emergency action was unwarranted and instructed the parties to proceed by complying with Judge Faruqui's briefing schedule.

That evening, the government filed its response to Judge Faruqui's order calling for briefing on whether he is permitted to accept an indictment returned by a Superior Court grand jury.  ECF No. 17.  The government's response stated that this Court should accept the indictment "[f]or the reasons set out in the Government's" emergency motion."  The response also stated that:  "The D.C. Circuit held in *United States v. Seals*, 130 F.3d 451 (D.C. Cir. 1997), that pursuant to D.C. Code § 11-1916 a Superior Court grand jury is empowered to return an indictment to this Court.  This Court must accept the returned indictment."  ECF No. 17.

Mr. Stewart responded, as ordered, on October 7, 2025.  ECF No. 21.  Mr. Stewart argued that the Federal Rules of Criminal Procedure precluded Judge Faruqui from accepting the indictment and that the D.C. Circuit's decision in *Seals* was not controlling in this situation.  The government then filed an unsolicited reply to Mr. Stewart's opposition on October 8, 2025.  ECF No. 23.

Judge Faruqui convened a hearing on October 9, 2025, where he informed the parties that he had determined that he did have the authority to review the validity of an indictment and that he would not be accepting the indictment in this case as it

was facially invalid.  Judge Faruqui entered a minute order to this effect indicating that a written opinion would follow.  Judge Faruqui issued his opinion later that evening.  ECF No. 24.

Judge Faruqui concluded that it was "well within a magistrate judge's discretion to refuse a facially invalid indictment," because "the government's position would obligate [a magistrate judge] to accept any and all indictment documents the government thrusts before it," ECF No. 24 at 3-4, regardless of any number of glaring discrepancies which may appear on the face of an indictment. Judge Faruqui held that "[i]t should come as no surprise to the government that [magistrate judges] serve as more than a mere rubber stamp on grand jury returns." ECF No. 24 at 4.

On the merits, Judge Faruqui concluded that the Federal Rules of Criminal Procedure rendered the indictment in this case facially invalid.  Judge Faruqui held that Rules 1 and 6 require that an indictment be returned by a grand jury summoned by "the court" and that under the Rules, the Superior Court does not satisfy the definition of "court" in Rule 1.  Judge Faruqui then concluded that the D.C. Code and the Circuit Court's opinion in *Seals* did not require him to reach the opposite conclusion.  ECF No. 24 at 8-11.

Five days later, on October 14, 2025, the government petitioned this Court to

review Judge Faruqi's decision to reject the indictment for the same reasons it previously presented to Judge Faruqi.

**<u>Argument</u>**

The Federal Rules of Criminal Procedure are clear. Federal judges are required to review the face of an indictment before accepting it from a grand jury to ensure that it is facially valid. This cursory examination includes confirming that a federal felony is originating from an indictment returned by a *federal* grand jury summoned by a *federal* judge. The Rules have even specifically excluded the judges of the District of Columbia from the list of those empowered to summon a grand jury which can return a federal indictment. Neither the D.C. Code nor the Circuit Court's opinion in *Seals* require otherwise. The indictment in this case, therefore, must be rejected.

## I.  THE FEDERAL RULES FORBID ACCEPTING A SUPERIOR COURT GRAND JURY RETURN

The Federal Rules of Criminal Procedure require that an indictment returned to initiate a federal felony case originate from a grand jury convened in a federal court. An indictment originating from any other court is, therefore, facially invalid, and must be rejected.

6

**A.    The Court must reject a facially invalid indictment.**

Judges are not "a mere rubber stamp on grand jury returns."  ECF No. 24 at 4.  Rather, judges receiving an indictment—whether a magistrate judge or a district judge—have an obligation to review the indictment on its face before accepting it. A facially invalid indictment must be rejected to not unlawfully initiate a criminal case against a defendant.

The Supreme Court has made clear that a defendant may challenge an indictment before it is returned, questioning whether it was returned by a "legally constituted and unbiased grand jury" and whether the indictment is "valid on its face." *Lawn v. United States*, 355 U.S. 339, 349-50 (1958); *see also Costello v. United States*, 350 U.S. 359, 363 (1956) ("An indictment returned by a *legally constituted* and unbiased grand jury, like an information drawn by the prosecutor, *if valid on its face*, is enough to call for trial of the charge on the merits.  The Fifth Amendment requires nothing more." (emphasis added)).  Unlike a challenge to the evidence presented to the grand jury, this sort of challenge does not result in "a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury." *Lawn*, 355 U.S. at 349.  Instead, this sort of challenge calls on the judge reviewing the indictment to confirm only that nothing is amiss on the

indictment's face.  This limited inquiry is not only permitted, but required, to ensure that indictments are not wrongfully returned.

To argue otherwise would be "an astonishingly callous argument which ignores the obvious.  For a wrongful indictment is no laughing matter; often it works a grievous, irreparable injury to the person indicted.  The stigma cannot be easily erased." *In re Fried*, 161 F.2d 453, 458 (2d Cir. 1947).  Especially "in our society [where] liberty is the norm," *United States v. Munchel*, 991 F.3d 1273, 1279 (D.C. Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)), courts must take care not to accept invalid indictments.  Accepting an indictment often results in arrest and pretrial detention and "[i]mposing those consequences on anyone who has not yet been convicted is serious." *Barker v. Wingo*, 407 U.S. 514, 532 (1972).  "'It is especially unfortunate to impose them on those persons who were wrongly charged to begin with.'"  ECF No. 24 (quoting *Barker*, 407 U.S. at 532).

Indeed, indictments have serious consequences on the lives of a criminal defendant.  An indictment "may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and friends." *United States v. Marion*, 404 U.S. 307, 320 (1971).

When a grand jury foreperson seeks to return an indictment in open court, the judge receiving that indictment has an obligation to review the indictment to ensure

that it is facially valid. This obligation is not onerous. The reviewing judge must ensure that the indictment names the defendant and lists the charges against him. The reviewing judge should ensure that the charges brought against the defendant are based on criminal laws still in effect. The reviewing judge should also confirm that the requisite number of grand jurors voted in favor of the indictment and that the person returning the indictment is the grand jury foreperson or deputy foreperson. And no less important, the reviewing judge should check that the grand jury returning the indictment was constituted by the correct court. A judge in the federal District Court for the Eastern District of Virginia, for example, could not accept an indictment returned by the Arlington County Circuit Court grand jury.

A judge should accept an indictment only when the judge is satisfied that the indictment is valid on its face. Typically, confirming that an indictment is facially valid should require nothing more than a glance at the indictment itself. But if the indictment fails to satisfy these most basic requirements, the judge has an obligation to reject it. *See* ECF No. 24 at 4 (magistrate court rejected an indictment where the indictment showed that the government had failed to present a charge to the grand jury).

The government no longer contests that courts have an obligation to review indictments before accepting them in this Court. Before Judge Faruqui, the

government argued that magistrate judges have no authority to review an indictment. ECF No. 15 at 10, ECF No. 23 at 6. Indeed, when this Court convened an emergency hearing, the government maintained that a judge must accept even a facially invalid indictment. October 3, 2025, Emergency Hearing Tr. at 5:5-12 (Q: Are you saying [the magistrate judge] would have to accept that indictment even if it were flawed or even if it were improperly presented? A: I believe so, your honor.). But the government has abandoned this position. In its filing seeking review of Judge Faruqui's decision to reject the indictment, the government never once asserts that he did not have the authority to do so. The government, therefore, has waived this argument before this Court. *Petit v. U.S. Dep't of Educ.,* 675 F.3d 769, 779 (D.C. Cir. 2012).

## B.    The Federal Rules require that an indictment be returned by a grand jury of the *federal* court.

The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury." U.S. Const. amend V. The Supreme Court has held that this provision of the Fifth Amendment requires that all felony charges must proceed through an indictment returned by a grand jury. *Ex parte Wilson*, 114 U.S. 417, 427 (1885); *United States v. Moreland*, 258 U.S. 433, 441 (1922). Congress codified this requirement in the Federal Rules of Criminal Procedure.

10

The Federal Rules of Criminal Procedure "govern the procedure in *all criminal proceedings in the United States district courts*, the United States courts of appeals, and the Supreme Court of the United States."  Fed. R. Crim. P. 1(a)(1) (emphasis added).  Rule 7, which provides that all felony convictions proceed by indictment, is a direct codification of the Fifth Amendment.  Fed. R. Crim. P. 7(a)(1) ("An offense (other than criminal contempt must be prosecuted by an indictment if it is punishable: (A) by death; or (B) by imprisonment for more than one year.").  Under the Rules, an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by the government."  Fed. R. Crim. P. 7(c)(1).  "For each count, the indictment … must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated."  *Id.*

Rule 6, in turn, governs the grand jury which must return an indictment.  "When the public interest so requires, the court must order that one or more grand juries be summoned."  Fed. R. Crim. P. 6(a)(1).  "The court," then "will appoint one juror as the foreperson and another as the deputy foreperson."  *Id.* 6(c).  Proceedings before the grand jury are generally confidential, but "[t]he court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter" for various reasons.  *Id.* 6(b)(2)(E).

"A grand jury may indict only if at least 12 jurors concur. The grand jury—or its foreperson or deputy foreperson—must return the indictment to a magistrate judge in open court." Fed. R. Crim. P. 6(f). "If a complaint or information is pending against the defendant and 12 jurors do not concur in the indictment, the foreperson must properly and in writing report the lack of concurrence to the magistrate judge." *Id.*

"A grand jury must serve until the court discharges it, but it may serve more than 18 months only if the court, having determined that an extension is in the public interest, extends the grand jury's service." Fed. R. Crim. P. 6(g). "An extension may be granted for no more than 6 months, except as otherwise provided by statute." *Id.* Individual grand jurors may be excused by "the court" either temporarily or permanently. *Id.* 6(h). If a grand juror is excused permanently, "the court may impanel an alternate juror in place of the excused juror." *Id.*

Rule 6 makes clear, then, that "the court" is integral to the grand jury's functioning. "The court" summons the grand jury. "The court" appoints a foreperson and deputy foreperson. "The court" decides when to disclose grand jury matters to the public. "The court" may excuse grand jurors. And "the court" can replace excused grand jurors. The Federal Rules, however, define "the court" to exclude the

local District of Columbia courts and their judges. A Superior Court grand jury, therefore, cannot return an indictment in compliance with Rule 6.

The Federal Rules' definition of "court" is plain. Rule 1 defines "court" as "a federal judge performing functions authorized by law." Fed. R. Crim. P. 1(b)(2). The Rules, in turn, define "federal judge," to mean "a justice or judge of the United States as these terms are defined 28 U.S.C. § 451"; "a magistrate judge"; and "a judge confirmed by the United States Senate and empowered by statute in any commonwealth, territory, or possession to perform a function to which a particular rule relates." Fed. R. Crim. P. 1(b)(3). Judges of the Superior Court are not included within this definition of "federal judge."

Judges of the D.C. Superior Court are not covered by 28 U.S.C. § 451. A "judge or justice" referred to in 28 U.S.C. § 451 includes the Chief Justice or an Associate Justice of the Supreme Court and any judge of a court created by an act of Congress which is "entitled to hold office during good behavior." 28 U.S.C. § 451. Judges of the Superior Court, however, are not entitled to hold office during good behavior. Rather, they are appointed for fifteen-year terms. D.C. Code 1-204.31(c).

Judges of the Superior Court—even magistrate judges of the Superior Court—are not "magistrate judges" under the Rules. Rule 1 defines a "magistrate judge" to be "a United States magistrate judge as defined in 28 U.S.C. §§ 631-39." And these

13

provisions of the U.S. Code define a magistrate judge as one appointed by "the judges of each United States district." 28 U.S.C. § 631. D.C. Superior Court judges are not appointed by U.S. District Court judges, but rather by the President. And Superior Court magistrate judges are appointed by the Chief Judge of the Superior Court. D.C. Code § 11-1732(a).

Finally, judges of the Superior Court are not judges of a United States commonwealth, territory, or possession because the District of Columbia is neither a commonwealth, a territory, nor a possession. The Rules of Criminal Procedure do not define these terms, but the U.S. Department of the Interior provides necessary context. A "commonwealth" is an "organized United States insular area, which has established with the Federal Government, a more highly developed relationship, usually embodied in a written mutual agreement." U.S. Dep't of the Interior, Definitions of Insular Area Political Organizations, https://www.doi.gov/oia/islands/politicatypes. According to Interior, there are currently two commonwealths in the jurisdiction of the United States: The Northern Mariana Islands and Puerto Rico. *Id.* The Department has defined "territory" and "possession" identically as an "incorporated United States insular area, of which only one exists currently, Palmyra Atoll." *Id.* The term "possession" "still appears in Federal statutes and regulations" but "is no longer current colloquial usage." *Id.*

14

Neither the terms "commonwealth," "territory," nor "possession" encompass the District of Columbia. Indeed, the Rules discuss the District of Columbia as being distinct from commonwealths, territories, and possessions. In the definition of "state," Rule 1 notes that "'State' includes the District of Columbia, *and* any commonwealth, territory, or possession of the United States." If the District of Columbia were considered a commonwealth, territory, or possession, there would be no need to list it separately in the definition of "state."

The judges of the Superior Court, therefore, do not fall under any of the definitions of "federal judge" in Rule 1. Indeed, if there were any lingering doubt that Superior Court judges are not "federal judges" under the Rules, that doubt is eliminated by the committee notes to Rule 1. There, the drafters of the 2002 Amendment to Rule 1 specifically state that the "term [federal judge] does not include local judges in the District of Columbia." Fed. R. Crim. P. 1 Advisory Committee Notes-2002 Amendment.

The Court cannot accept the Superior Court indictment returned against Mr. Stewart because it is facially invalid.[2] It is undisputed that the face of the Indictment makes plain to this Court that it was returned by a Superior Court grand jury. A

---

[2] The indictment returned by the Superior Court grand jury has not been placed on the docket, so defense counsel is not aware of the specific wording of the indictment in this case.

15

Superior Court grand jury is not convened by "the court," *i.e.*, a "federal judge," as required by the Rules 1 and 6. The indictment is, therefore, facially invalid. The Court's analysis should end here.

The nature of the Superior Court grand jury confirms that it is not qualified to return a federal indictment. Jurors in the Superior Court, both grand and petit jurors, are not summoned by a federal judge but instead are summoned according to the D.C. Code. "At such times as are determined under the jury system plan, the Court shall summon or cause to be summoned from among qualified individuals under section 11-1906 sufficient prospective jurors to fulfill requirements for petit and grand jurors for the Court." D.C. Code § 11-1907. The definition of "the court" under the D.C. Code does not align with the definition of "the court" in the Federal Rules of Criminal Procedure. Under the D.C. Code, "the court" refers to "the Superior Court of the District of Columbia and may include any judge of the Court acting in an official capacity." D.C. Code § 11-1902(4).

The differences between this Court's juries and those of the Superior Court support Mr. Stewart's argument that he cannot be indicted on federal charges by a Superior Court grand jury. The juries of this Court and the Superior Court are not identical or managed identically. Congress created the Superior Court and the D.C. Court of Appeals in 1970 through the District of Columbia Court Reform and

Criminal Procedure Act. Pub. L. No. 91-358, 84 Stat. 480 (July 29, 1970).  When the Superior Court was first created, the Superior Court juries were summoned by this Court.  132 Cong. Rec. S15070-01 (Oct. 3, 1986) ("Under current law, the Federal district court for the District of Columbia is charged with running a single jury selection system for both the local and Federal Courts.").  Congress changed this in 1986 with the District of Columbia Judicial Efficiency and Improvement Act. "This bill … cut the ties that binds the local court to the Federal Court." *Id.*  As enacted, a "jury system [was] hereby established for the Superior Court of the District of Columbia."  D.C. Code § 11-1901.

And although this Court and the Superior Court both summon jurors from residents of the District of Columbia, they do not do so in the same way.  *Compare* Jury Selection Plan for the Random Selection of Grand and Petit Jurors, United States District Court for the district of Columbia (As amended May 17, 2022), https://www.dcd.uscourts.gov/sites/dcd/files/D.D.C.JurySelectionPlan-20220517.pdf, *with* Jury Plan for the Superior Court of the District of Columbia (May 28, 2020), https://www.dccourts.gov/sites/default/files/Jury-Plan-2019-Effective-May-2020.pdf.  This Court creates its master juror list by obtaining names of D.C. residents from the D.C. Board of Elections, the D.C. Department of Motor Vehicles, and the D.C. Department of Finance and Revenue.  The Superior Court, on

the other hand, creates its master list from those three sources *and* the list of individuals who have qualified to receive any type of public assistance benefits in the District of Columbia, the list of persons who have become naturalized citizens in the District of Columbia, and "such other source lists as may become available." Superior Court Jury Plan at 1-2. This Court then requires that all duplicates be excluded from the master list. D.D.C. Jury Plan at 2. The Superior Court jury plan does not include a requirement to exclude duplicates.

The Superior Court and this Court also exclude different classes of citizens from participating on juries. This Court excludes only five classes of citizens from participating on juries: non-citizens, those unable to read, write, and understand English, those unable to speak English, those incapable to render satisfactory service, and those charged or convicted of a felony who have not had their rights restored. D.D.C. Jury Plan at 4. The Superior Court, however, excludes those charged with misdemeanor offenses as well, and automatically requalifies those committed of felonies to serve on juries one year after completing their sentence. Superior Court Jury Plan at 4.

Moreover, the grand juries of the two courts function differently. "D.C. Superior Court grand juries sit for 25 days and generally see a huge volume of arrest-generated cases. These cases often involve a single witness testifying before the

grand jury. In contrast, the federal grand jury sits for a year, yet hears far fewer cases. And these cases allege violations of generally more complex federal crimes that are often the subject of lengthy investigations for which multiple witnesses would testify. Arguably, the lower volume of cases gives the federal grand jurors additional time to pressure test the government's case." ECF No. 24 at 10.

These differences confirm the impropriety of seeking a federal indictment from a local grand jury. The citizens, residents, and visitors of D.C. deserve better.

## II. THE D.C. CODE DOES NOT REQUIRE THIS COURT TO ACCEPT AN INDICTMENT FROM A SUPERIOR COURT GRAND JURY

The government argues that Judge Faruqui was required by the D.C. Code to accept an indictment returned by a Superior Court grand jury. Specifically, the government points to D.C. Code § 11-1916(a), which provides that "[a] grand jury serving in the District of Columbia may take cognizance of all matters brought before it regardless of whether an indictment is returnable." According to the government, this statute grants the U.S. Attorney's Office *carte blanche* to seek indictments on federal charges from a Superior Court grand jury and *vice versa*. That is a stretch. The language of § 11-1916(a) is anything but clear and the timing of the amendments to the Federal Rules of Criminal Procedure belie this argument.[3]

_____

[3] In the alternative, the Federal Rules trump the D.C. Code in this instance because the provisions in question are procedural in nature. In this Court, which at times

### A.    The statutory language rebuts the government's argument.

The government would have the Court believe that the meaning of § 11-1916(a) is plain and that through this provision, Congress has explicitly granted the U.S. Attorney's Office authority to seek indictments on federal charges from a local grand jury because a local grand jury is empowered to "take cognizance of all matters before it regardless of whether an indictment is returnable in the Federal or District of Columbia courts." § 11-1916(a).  But this is far from clear.

First, the term "take cognizance of" is ambiguous at best.  The government has asserted—twice now—that "cognizance" "means '(1) the right and power to try and determine case; jurisdiction,' *Cognizance*, Black's Law Dictionary (2d Ed. 2001)."  ECF No. 23 at 2; ECF No. 25 at 7-8.  There are a few issues with this definition, not the least of which is that the second edition of Black's Law Dictionary was not published in 2001, but in 1910, and its definition of "cognizance" is quite expansive, providing five different subcategories of the definition. *Cognizance*, Black's Law Dictionary 213 (2d ed. 1910).

---

deals with both federal and D.C. Code criminal offenses, defendants are protected by federal procedural rules, including the Federal Rules of Criminal Procedure and the Federal Rules of Evidence.  ECF No. 24 at 8-9. This Court, meanwhile, applies D.C. substantive law, such as elements of an offense and the rules of sentencing to D.C. Code offenses. *Id.*  Because the rules governing the grand jury are procedural, the Federal Rules control.

The government appears to be citing from the seventh edition of Black's Law Dictionary, published in 1999. The seventh edition defines cognizance as "The right and power to try and determine cases; JURISDICTION"; "The taking of judicial or authoritative notice"; "Acknowledgment or admission of an alleged fact; esp. (*hist.*), acknowledgment of a fine. *See* FINE (1); FINE SUR COGNIZANCE DE DROIT."; and "*Common-law pleading*. In a replevin action, a plea by the defendant that the goods are held in bailment for another. *Cf.* AVOWRY." *Cognizance*, Black's Law Dictionary 253 (7th ed. 1999).

Even under this seventh edition definition, the language of § 11-1619 is unclear. The fact that "cognizance" can speak to jurisdiction, authority, acknowledgment, and taking notice of muddies the waters. Perhaps, as the government argues, the language was intended to mean that any grand jury operating in the District could return an indictment to either court. But just as likely, this definition speaks to a grand jury's investigative function, clarifying that the grand jury's power to investigate is not limited by where the object of the investigation may ultimately be indicted.

**B.      The history of § 11-1916(a) undercuts the government's argument.**

The legislative history of § 11-1916 shows that its meaning is less clear than the government proffers. This provision of the D.C. Code was originally enacted by

Congress as D.C. Code § 11-1903 when it created the Superior Court in 1970. Pub. L. No. 91-358, 84 Stat. 515 (July 29, 1970). In the system established in 1970, the juries of the federal courts and the Superior Court were much more intertwined. At that time, "[j]urors serving within the District of Columbia [had] the same qualifications as provided for jurors in the Federal courts," and "[t]here [was] a single system in the District of Columbia for the selection of jurors for both Federal and District of Columbia courts." *Id.* That "selection system [was] prescribed by Federal law and executed in accordance therewith as provided by the United States District Court for the District of Columbia." *Id.*

In 1986, Congress elected to create two separate jury selection systems in the District of Columbia—one for federal court and one for the Superior Court. Pub. L. No. 99-650, 100 Stat. 3635 (Nov. 14, 1986); D.C. Code § 11-1901. Qualification for serving as a juror in Superior Court was no longer tied to eligibility to serve as a juror in federal court. D.C. Code § 11-1906. The 1986 congressional amendments to the D.C. Code moved § 11-1903 to its current location at § 11-1916. The 1986 Congressional amendments to the D.C. jury systems remain in effect today.

The 1986 legislation also spoke to how the juries of this Court and the Superior Court interact. In D.C. Code § 11-1917, Congress laid out the "coordination and cooperation of the courts." This section provides that to "the

extent feasible, the Superior Court and the United States District Court shall consider the respective needs of each court in the qualification, selection, and service of jurors.  Nothing in this chapter shall be construed to prevent such courts from entering into any agreement for sharing resources and facilities (including automated data processing hardware and software, forms, postage, and other resources)."  D.C. Code § 11-1917.  Clearly, Congress intended to limit the interactions between the two jury systems to the sharing of administrative systems if necessary.  Had Congress intended for the two courts to coordinate by sharing a grand jury, it surely would have said so in this provision.

Moreover, the language of § 11-1916(a) has likely *never* meant what the government argues.  When Congress created the D.C. Superior Court in 1970 and enacted § 11-1903, there was only one jury system in the District.  There would have been no need to confirm that a grand jury could return an indictment to either court—this was obvious under that original system.  And when Congress excised the D.C. Superior Court from the federal court jury system in 1986—and moved the "take cognizance" language to § 11-1916(a)—it would have made no sense to grant the Superior Court grand jury authority in federal court.  The entire point of the 1986 legislation was to separate the jury systems, not shackle them together.

23

Regardless of what Congress intended in 1970 when it originally enacted § 11-1903 or in 1986 when it moved it to § 11-1916, the Federal Rules of Criminal Procedure were amended to explicitly exclude the District of Columbia in 2002. And this later-in-time amendment controls. "[W]here there is a conflict between an earlier statute and a subsequent enactment, the subsequent enactment governs." *Busbee v. Smuith*, 549 F. Supp. 494, 523 (D.D.C. 1982) (quoting *Interstate Commerce Comm'n v. Southern Railway*, 543 F.2d 534, 439 (5th Cir. 1976)).

The government asserts that following the requirements of Rules 1 and 6 violates two canons of statutory construction. First, the government asserts that holding that Rule 1 and 6 limit the reach of § 11-1916(a) would improperly permit a general statute to modify a more specific statute. Second, the government asserts that reaching the same conclusion would be improperly finding that Congress had repealed § 11-1916(a) by implication when it enacted the 2002 amendments to the Federal Rules of Criminal Procedure. Neither argument is persuasive.

The government asserts that "[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one," ECF No. 25 at 6 (quoting *Morton v. Mancari*, 417 U.S. 535, 550-51 (1974)). Applying this, the government asserts that § 11-1916 is "specific" and cannot be controlled by the "general" Rules 1 and 6. How so?

24

Here, there is clear intention that Congress, through the 2002 Amendment, meant to exclude the District of Columbia courts and judges from its definition of "court" and "federal judge". The committee notes explicitly state that judges of the District of Columbia local courts are not considered federal judges who are required to summon a grand jury. Rarely is Congress's intention so clear.

Next, the government argues that Judge Faruqui's reading of Rules 1 and 6 would require finding that Congress had repealed § 11-1916(a) by implication. Not so. First, as discussed above, it is not clear that § 11-1916(a) ever had the meaning the government assigns. But putting that aside, even if when it was originally enacted as § 11-1903 in 1970 it did empower a single grand jury to return indictments in either court, that likely changed when Congress created two separate jury systems in the District of Columbia in 1986. By the time Congress amended the Criminal Rules in 2002, § 11-1916 likely had not empowered a Superior Court grand jury to return a federal indictment for 16 years.

Second, even if § 11-1916 does mean exactly what the government says, repeals by implication do occur when two statutes irreconcilably conflict with each other. *Posadas v. Nat'l City Bank*, 296 U.S. 497, 503 (1936). And here, the two provisions would explicitly conflict if the Court adopts the government's reading of § 11-1916(a). Federal Rules 1 and 6 would limit the ability to return a federal

25

indictment to a federal grand jury, but § 11-1916(a) would permit a Superior Court grand jury to ignore this rule. Because those provisions directly contradict, the later-in-time provision, *i.e.*, the 2002 amendment to Rules 1 and 6 must control.

### C.    A harmonious reading of the Rules and § 11-1916(a) does exist.

"[C]ourts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton*, 417 U.S. at 551. This axiom is no less true here and all parties agree that § 11-1916 and the Rules can be read harmoniously, but the parties disagree on what this reading is.[4]

The government offers that Rules 6 and 1 are not restrictive and therefore speak only to how a federal grand jury must conduct itself, but do not limit the ability of a Superior Court grand jury to return a federal indictment. ECF No. 25 at 9-11. Under the government's reading, Rule 6(a) requires a federal judge to summon a grand jury and Rule 6(f) discusses the grand jury voting to indict and returning the indictment, but nothing requires that the grand jury in 6(f) be the same grand jury

---

[4] The government's argument that a harmonious reading does exist is effectively a concession that no repeal by implication has occurred here.

summoned in 6(a).  ECF No. 25 at 10.  This reading stretches the statute to the point of absurdity and flies in the face of the canons of statutory interpretation.

Under the canon of consistent usage, "[i]n a given statute, the same term usually has the same meaning and different terms usually have different meanings." *Pulsifer v. United States*, 601 U.S. 124, 149 (2024) (citing A. Scalia & B. Garner, Reading Law 170-171 (2012)).  The government is asserting, however, that the term "grand jury" means different things not just throughout the Federal Rules but within Rule 6 itself, which governs the grand jury.  This makes no sense.  Why would the grand jury in 6(f) be any different than the grand jury in 6(a), 6(b), 6(c), 6(d), 6(e), 6(g), or 6(h)?  There is no indication in Rule 6 or anywhere else in the Rules that the grand jury returning an indictment in 6(f) is not the same grand jury governed by the rest of Rule 6.

The government asserts that "there is nothing in the text of Rule 6 that is necessarily irreconcilable with Superior Court grand juries exercising the coextensive jurisdiction granted by D.C. Code § 11-1916," ECF No. 25 at 10, but stating this emphatically does not make it true.  If Superior Court grand juries are permitted to exercise "coextensive jurisdiction" with federal grand juries, then Rules 1 and 6 are rendered meaningless.  The Federal Rules of Criminal Procedure were put in place to "provide for the just determination of every criminal proceeding, to

27

secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay." Fed. R. Crim. P. 2. Permitting the U.S. Attorney's Office to go across the street to get an indictment after failing to get one in this courthouse is hardly just or fair to the people of D.C.

As Judge Faruqui noted, giving the U.S. Attorney's Office two bites at the apple of securing a federal indictment would amount to "disparate treatment of D.C. defendants within the federal judicial system" which "cannot be tolerated." ECF No. 24 at 9. The government responds that Judge Faruqui is "incorrect" because "[d]efendants in other federal districts face the prospect of state and federal indictments without the same double jeopardy protections that D.C. defendants enjoy." ECF No. 25 at 13 n.2. The government, again, misses the mark. Judge Faruqui has correctly noted that should the government prevail here, D.C. defendants will be the only defendants in the country where the United States government will be able to take advantage of two different court systems to secure an indictment for federal charges. This is the sort of unfairness the Federal Rules were designed to prevent.

Judge Faruqui has offered a reasonable reading of D.C. Code § 11-1916(a): "It is permissible under both the Federal Rules and D.C. Code § 11-1916 for a *federal* grand jury to return an indictment being prosecuted in *D.C. Superior Court*." ECF

No. 24 at 10 (emphasis in original). Should this Court find it necessary to assign a meaning to D.C. Code § 11-1916(a), it should adopt Judge Faruqui's interpretation. But it is not necessary for the Court to interpret § 11-1916(a). Rather, a plain reading of the Rules makes clear that what the government has done here is impermissible and the indictment cannot be accepted by any federal judge.

## III.    THE D.C. CIRCUIT'S OPINION IN *SEALS* DOES NOT CONTROL

The government's reliance on the D.C. Circuit's opinion in *United States v. Seals*, 130 F.3d 451 (D.C. Cir. 1997) fares no better. When a prior case does not include a ruling on a particular issue, the case "cannot be considered binding precedent on that issue." *Common Cause v. FEC*, 108 F.3d 413, 416 (D.C. Cir. 1997). And "[j]udicial decisions do not stand as binding 'precedent' for points that were not raised, not argued, and hence not analyzed." *Legal Services Corp. v. Velazquez*, 531 U.S. 533, 557 (2001) (Scalia, J., dissenting).

*Seals* is not controlling because the *Seals* court never addressed the questions raised in this case. In *Seals*, the court was presented with an indictment originally returned by a Superior Court grand jury, not after a federal grand jury refused to indict, as in Mr. Stewart's case. *Id.* at 453. The defendants were convicted after a jury trial of conspiracy, kidnapping, and extortion. *Id.* On appeal, the defendants argued that § 11-1916(a) "is unconstitutional because it vests the judicial power of

the United States outside of Article III and it does so by improperly empowering the executive." *Id.* at 455-56. The court rejected these constitutional arguments. The *Seals* court, however, was never called to pass upon the question of whether the language of § 11-1916(a) authorized a Superior Court grand jury to return an indictment in federal court pursuant to Rule 6. This, therefore, remains an open question. And, similar to the provision itself, the decision in *Seals* was issued in 1997—five years before the Supreme Court and Congress revised the Federal Rules of Criminal Procedure to exclude District of Columbia judges from summoning a grand jury that could return an indictment in federal court. *Seals*, therefore, does not control here.

Moreover, one of the primary rationales for the decision in *Seals* is no longer in effect. The court devoted much attention to the fact that grand juries in both courts were selected from identical pools and by "identical method[s]." *Id.* at 460. As discussed above, that is no longer true.

The government makes a last-ditch argument, saying that "if the 2002 amendment to the Federal Rules of Criminal Procedure abrogated *Seals*, the issue would have been discovered and litigated at some point during the nearly twenty-three years between the 2002 amendments and this case." ECF No. 25 at 14. In support, the government cites to six cases where this has happened in the 55 years

since the Superior Court was created in 1970, the 39 years since the jury systems of the two D.C. courts were separated, and the 23 years since the 2002 amendment to the Federal Rules. This is far from persuasive. That this issue has not yet been litigated does not affect the validity of Mr. Stewart's argument or the plain language of Rules 1 and 6.

## IV.    PROSECUTORIAL DISCRETION IS NOT UNLIMITED

The government asserts that its decision to seek an indictment in Superior Court is an element of its broad prosecutorial discretion and, therefore, cannot be challenged. ECF No. 25 at 14. And the government is correct that there is precedent supporting the government "presenting to one grand jury charges which a previous grand jury has ignored." *United States v. Thompson*, 251 U.S. 407, 414-15 (1920). But prosecutorial discretion is not the issue in Mr. Stewart's case. The issue is whether the indictment returned by a Superior Court grand jury is invalid on its face.

## **Conclusion**

The Federal Rules of Criminal Procedure do not permit a grand jury summoned by the Superior Court of the District of Columbia to return an indictment in federal court. This makes the indictment returned against Mr. Stewart facially invalid and the Court, therefore, has no authority to accept the indictment returned in this case.

Respectfully Submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
MICHELLE M. PETERSON
MATTHEW L. FARLEY
Assistant Federal Public Defenders
625 Indiana Ave., N.W.
Washington, D.C.  20004
(202) 208-7500