UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> KEVONTAE STEWART, <br><br> Defendant. | Magistrate Judge No. 25-225 |

**MEMORANDUM OPINION**

After failing to secure an indictment from a federal grand jury sitting in this district, the Government turned to a D.C. Superior Court grand jury, asking for an indictment for the same violation of federal criminal law. That local grand jury returned a true bill, which the Government delivered to one of our federal magistrate judges. Understandably surprised by this unorthodox approach, he initially refused to accept the return and asked for briefing on whether this course was legally permissible. After such briefing, he wrote a thoughtful opinion concluding that he had no power to accept the indictment. The Government appealed to this Court.

This issue is challenging, as dueling statutory sources provide contradictory answers. A provision of the D.C. Code ostensibly permits local grand juries to return indictments in federal court, while the Federal Rules of Criminal Procedure arguably say the opposite. The Court ultimately holds that the D.C. Code prevails, and it thus orders the criminal-duty magistrate judge to accept the indictment.

1

I.      **Procedural History**

On September 18, 2025, Kevontae Stewart was arrested. See ECF No. 3 (Arrest Warrant). The Government filed a Complaint alleging that he had possessed a firearm after previously being convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). See ECF No. 1 (Crim. Compl.). The Government sought an indictment from a federal grand jury, but that grand jury returned a no bill on September 26. See ECF No. 9 (No Bill). Rather than try its luck with a different federal grand jury, the Government presented its case to a Superior Court grand jury, which voted to return the indictment on the same federal charge. See ECF No. 14 (MJ Tr.) at 2:12–17. The Government then returned to federal court and presented the local indictment to Magistrate Judge Zia Faruqui on September 29. Id. at 2:2–17.

At a hearing that day, Magistrate Judge Faruqui declined to accept the indictment return. Id. at 4:17–19. Noting that it was exceedingly unusual for the Government to seek an indictment for federal crimes from a local grand jury — and perhaps unprecedented to do so after a federal no bill — Magistrate Judge Faruqui ordered briefing on whether the law permitted such a maneuver. Id. at 4:17–6:13.

Instead of engaging in such briefing, the Government filed an emergency request asking this Court to vacate Magistrate Judge Faruqui's order. See ECF No. 15 (Emer. Req. Vacate). It contended that he lacked the authority to refuse to receive the indictment because magistrate judges do not have the power to "dismiss or quash an indictment." Id. at 10 (quoting 28 U.S.C. § 636(b)(1)(A)). It further argued that briefing was unnecessary because the D.C. Code clearly permits a Superior Court grand jury to return an indictment in federal district court. Id. at 8. This Court held a hearing on October 3 and denied the Government's request for emergency relief, allowing the expedited briefing to go forward. See Minute Entry of Oct. 3, 2025.

2

After briefing was complete, Magistrate Judge Faruqui penned an opinion, refusing to accept the local indictment of Stewart. See ECF No. 24 (Order) at 1. He held that the indictment was "facially invalid" because the Federal Rules of Criminal Procedure, as amended in 2002, require that a valid indictment be returned by a grand jury empaneled by a "court," id. at 5–6, which unequivocally excludes grand juries convened in D.C. Superior Court. See Rule 1(b). Magistrate Judge Faruqui further held that the relevant D.C. Code provision "cannot modify federal court procedural rules, nor can it . . . override the grand jury procedures expressly set forth in the Federal Rules that require indictments to be issued by a grand jury summoned by the federal court." Id. at 8.

The Government then appealed the Order to this Court. See ECF No. 25 (Mot. Rev.); see also LCrR 59.3(a) ("Requests for review of an order by a magistrate judge in a criminal matter not assigned to a district judge . . . are to be made to the Chief Judge . . . ."). It now renews its argument that the D.C. Code permits a local grand jury to return an indictment in federal court — and vice versa — and contends that the Federal Rules do not abrogate that authorization. See generally Mot. Rev. at 6–10. To hold otherwise, the Government argues, would constitute a "repeal by implication" of a D.C. Code provision by a seemingly unrelated amendment to the Federal Rules. Id. at 11. Defendant naturally takes the opposite view and urges affirmance of Magistrate Judge Faruqui's order. See generally ECF No. 28 (Resp.).

**II.    Analysis**

The Court initially examines whether a magistrate judge has authority to reject an indictment in the first place. Finding that he does, the Court proceeds to discuss the propriety of the return in this case.

A.     Magistrate Judge Authority

Although it did not press this argument in its Motion for Review, the Government contended before Magistrate Judge Faruqui and this Court during the emergency hearing that magistrate judges have no power to reject a facially invalid indictment. See Emergency Req. Vacate at 10. As it also seeks to "preserve that argument" for appeal, see ECF No. 32 (Tr.) at 3:14–15, the Court first addresses this question.

Magistrate judges' power comes from statutory, rather than constitutional, sources, and it is thus subject to "the district court's total control and jurisdiction." Wellness Int'l Network, Ltd. v. Sharif, 575 U.S. 665, 677 (2015) (quotation marks omitted). They cannot resolve certain dispositive motions — say, a motion to "dismiss or quash an indictment." 28 U.S.C. § 636(b)(1)(A). But accepting indictments, and ensuring that those indictments facially conform to the Federal Rules of Criminal Procedure, falls within the heartland of a magistrate judge's authority. See Rule 6(f) (requiring grand jury to "return the indictment to a magistrate judge in open court") (emphasis added).

Confirming that an indictment is returned by a grand jury authorized to return it is akin to verifying that the document satisfies other features described in the Federal Rules of Criminal Procedure. Those features include that the indictment: 1) identifies one or more defendants; 2) actually charges a crime, see Rule 7(c)(1); 3) is "signed by an attorney for the government," id.; and 4) was returned by a particular grand jury. See Rule 6(a); U.S. Const. amend. V. An indictment's compliance with those requirements is apparent from the face of the document, and a magistrate judge can require the Government to fix errors before accepting the indictment. See Order at 4 (noting Magistrate Judge Faruqui rejected "facially invalid indictment" where Government "failed to present a charge to the grand jury . . . that was in its indictment"). Such

4

challenges are thus unlike ones that are appropriately brought via motions to dismiss — *e.g.*, "a defect in instituting the prosecution," like improper venue or error during the grand-jury proceeding, see Rule 12(b)(3)(A), or substantive challenges to the sufficiency of an indictment. See Rule 12(b)(3)(B).

Even if Congress wrested the indictment-return process from magistrate judges and directed clerks of court to file indictments upon receipt from the Government attorney, those clerks would still ministerially confirm that the filed document was in fact an indictment. Cf., e.g., Villasenor v. Fairfield Police Dep't, 2011 WL 1599152, at *5–6 (E.D. Cal. Apr. 27, 2011) (clerk "returned as un-filed" document "written entirely in Spanish," which was appropriate since documents in language other than English did not "t[ake] the form of actual filings"); Sermeno v. Tang, 2025 WL 2722659, at *5 (N.D. Cal. Sep. 5, 2025) (permissible for state court clerk to reject filings for failure to "comply with technical formatting requirements"), adopted, 2025 WL 2721682. It follows that magistrate judges, vested with statutory power to supervise indictment proceedings, can both verify that a document is actually an indictment and order briefing to resolve a discrete legal question regarding indictment requirements. Cf. United States v. Seals, 130 F.3d 451, 457 (D.C. Cir. 1997) ("[T]he responsibility for issuing subpoenas and for accepting returned indictments is vested in United States magistrate judges.").

The Government's argument — that a magistrate judge cannot reject the return of a document that on its face is not a proper indictment — presents untenable implications. Under its theory, a magistrate judge would be obligated to accept patently insufficient indictments, including those written in a foreign language or those returned by a grand jury in an entirely different jurisdiction. See ECF No. 21 (Def. Emer. Resp.) at 4 (noting Government implied as much during hearing on emergency request to vacate briefing). That would undermine

magistrate judges' administrative and supervisory authority over the grand jury and indictment process.

In this case, Magistrate Judge Faruqui received an indictment from a non-federal grand jury, which, absent a distinct provision of the D.C. Code, would undisputedly have been an invalid indictment in federal district court.  See Tr. at 4:7–14 (government agreeing that authority of local grand jury to return indictment in federal court is "wholly reliant" on Section 11-1916(a)).  If Magistrate Judge Faruqui were right on the merits, it would be as if the Government had presented him with an indictment returned from a court in Sweden.  Both his decision to seek briefing on whether a local grand jury is authorized to return an indictment in federal court and his conclusion that magistrate judges can reject indictments returned by an unauthorized grand jury strike an appropriate balance between magistrate judges' circumscribed power and the need to verify that defendants are subject only to procedurally valid indictments.  Cf. Costello v. United States, 350 U.S. 359, 363 (1956) (Fifth Amendment requires "[a]n indictment returned by a legally constituted . . . grand jury").

Nor is the ability of an indicted defendant to subsequently move for the dismissal of a patently invalid indictment a sufficient check.  "[A] wrongful indictment is no laughing matter; often it works a grievous, irreparable injury to the person indicted." In re Fried, 161 F.2d 453, 458 (2d Cir. 1947).  What is more, a defendant would be subject to unnecessary court appearances, the risk of pretrial detention, and collateral consequences like employment loss or family upheaval between when the indictment is returned and its inevitable dismissal.  See also Klopfer v. North Carolina, 386 U.S. 213, 222 (1967) (noting "pendency of the indictment" subjects defendant to "public scorn," risks employment, and chills speech — all amounting to

"oppression"). When an indictment can be deemed plainly deficient as an administrative matter, there is no need to trigger those consequences.

The Court is thus convinced that a magistrate judge may reject an indictment that is facially invalid. It now turns to whether one returned by a local grand jury falls into that category.

  B.  <u>Power of Local Grand Jury</u>

The merits present a much closer question. As the Court observed during argument on the Motion for Review, "[W]here [the analysis] begins is where it ultimately ends." Tr. at 13:20–21. Put another way, to answer which statutory authority governs is to resolve the case. The Court looks first at the Government's reliance on a D.C. Code provision and then examines the defense's counter with the Federal Rules of Criminal Procedure.

  1.  *D.C. Code Section 11-1916(a)*

The Government starts with D.C. Code Section 11-1916(a). Originally enacted by Congress in 1970 and codified as Section 11-1903(a), that section provides: "A grand jury serving in the District of Columbia may take cognizance of all matters brought before it regardless of whether an indictment is returnable in the Federal or District of Columbia courts." <u>See</u> Pub. L. No. 91-358, 84 Stat. 515 (July 29, 1970). The text grants expansive authority: it covers any grand jury "serving in the District of Columbia," which would apply to grand juries convened by either District or Superior Court. It authorizes those grand juries to consider "all" matters before them, without restriction, and, for good measure, it clarifies that matters may be brought before either grand jury "regardless" of where a resulting indictment is returnable. Had Congress wanted to limit cross-jurisdictional power to certain issues, specific grand juries, or particular phases of the investigation and indictment process, it could easily have drafted a much

7

different statute with those limitations.  Cf. Consumer Fed. of Am. v. United States Dep't of Health & Human Servs., 83 F.3d 1497, 1503 n.6 (D.C. Cir. 1996) (statutory reading unlikely when Congress "presumably would have drafted the statute differently" to achieve obvious alternative outcome).  By its plain terms, Section 11-1916(a) appears to permit the Government to do what it did here: seek an indictment from a local grand jury, returnable in District Court.  To be clear, it also allows the reverse: a federal grand jury returning an indictment in Superior Court.

Our Circuit has concluded, albeit in *dicta*, that Section 11-1916(a) does indeed authorize a local grand jury to return a federal indictment.  In Seals, where a Superior Court grand jury indicted two defendants on the federal charges of conspiracy, kidnapping, and extortion and returned the indictment in federal court, our Court of Appeals rejected a constitutional challenge to Section 11-1916(a).  See 130 F.3d at 452.  The Circuit concluded that it did not encroach upon a defendant's right to be indicted by a grand jury simply because an Article I judge (*i.e.*, a D.C. Superior Court judge) supervised the grand-jury proceedings.  Id. at 458–60.  In so doing, it described Section 11-1916(a) as authorizing "a limited sharing of the supervisory power" with D.C. Superior Court judges, who could oversee local grand juries that returned indictments to District Court.  Id. at 459.  While Seals discussed the statutory meaning of Section 11-1916(a) only in *dicta*, it presumably would not have upheld the local grand jury's indictment as constitutional if it had thought that such a grand jury lacked the ability to indict a defendant in federal court at all.  See also id. at 453 (describing, without questioning, District Court's holding that Congress "validly authorized the D.C. Superior Court . . . to supervise a grand jury that can indict for both D.C. and federal offenses").

Two other courts in this district have assumed that Section 11-1916(a) authorizes precisely the type of indictment the local grand jury returned in this case. See, e.g., United States v. Allen, 729 F. Supp. 120, 122 (D.D.C. 1989); United States v. Brown, 2007 WL 2007513, at *4 (D.D.C. July 9, 2007). While none has squarely addressed the question before this Court — what Section 11-1916(a) means as a matter of statutory interpretation — the unanimity across courts indicates that other jurists took for granted that Section 11-1916(a) permits local and federal grand juries in D.C. to return indictments in either court. That bolsters this Court's conclusion that Section 11-1916(a) authorizes such coextensive jurisdiction.

The defense points out that "take cognizance" does not self-evidently include the power to vote to return an indictment. See Resp. at 20. Stewart contends that the term instead only "speaks to a grand jury's investigative function." Id. at 21 (emphasis added). Under his reading, any grand jury sitting in a D.C. court (local or federal) would have the "power to investigate," no matter "where the object of the investigation may ultimately be indicted" — but could return an indictment only in the court that convened it. Id.

While that reading is creative, the D.C. Court of Appeals has found that such an interpretation is "overly literal." Hackney v. United States, 389 A.2d 1336, 1339 (D.C. 1978). In Hackney, it rejected the argument that this code provision "permits a grand jury only to 'take cognizance' of a matter ultimately proper before another court, but not to return an indictment with respect to such matters." Id. Grand juries engage in two central activities: investigating potential crimes and voting on whether to return indictments in those matters. United States v. Doe Corp., 59 F.4th 301, 304 (7th Cir. 2023) ("[T]he grand jury has broad authority to investigate potential wrongdoing and, if wrongdoing is discovered, to decide whether to return a criminal indictment."). The breadth of the D.C. Code provision's terms — which permit grand

9

juries to "take cognizance" of "all matters" — is consistent with a jurisdictional grant covering all grand-jury functions, not one in particular. See D.C. Code § 11-1916(a). And because grand juries primarily investigate and indict, a statutory interpretation that hives off one of those two functions is unlikely absent specific words authorizing the grand jury only to investigate, probe, inquire, or take some similar action. This Court agrees with the D.C. Court of Appeals that the best interpretation of Section 11-1916(a) allows D.C. grand juries to vote to return indictments in matters before it if those indictments are "returnable in Federal or District of Columbia courts."

The defense puts forth another argument: that Congress changed the terms of D.C. grand juries' authority when it passed the District of Columbia Jury System Act. See Resp. at 22; Pub. L. No. 99-650, 100 Stat. 3635 (Nov. 14, 1986). The Act split the previously unified jury-selection systems for District Court and Superior Court. It also recodified then-Section 11-1903 as Section 11-1916, without any changes to the provision's language. Compare Pub. L. No. 99-650, 100 Stat. 3635 (Nov. 14, 1986), with Pub. L. No. 91-358, 84 Stat. 515 (July 29, 1970) (identical language in original Section 11-1903). The defense contends that the recodification, standing alone, altered the provision's meaning because the "context completely changed in 1986." Tr. at 17:17. But a "change of arrangement" in a statute "cannot be regarded as altering the scope and purpose of the enactment" absent Congress's "clearly expressed" intent to "change the[] effect" of the preexisting law. Fourco Glass Co. v. Transmirra Prods. Corp., 353 U.S. 222, 227 (1957). No evidence of congressional intent to alter D.C. grand juries' mutual indictment power exists in either the 1986 Act or its legislative history, and this Court will not "lightly assume that Congress silently attache[d] different meanings" to identical provisions. Azar v. Allina Health Servs., 587 U.S. 566, 574 (2019).

This Court is convinced that in 1970, Congress authorized local grand juries sitting in the District to return indictments in District Court, and vice versa. Absent any intervening statutory change, that authority remains today.

### 2.     *Federal Rules of Criminal Procedure*

Stewart hangs his hat, conversely, on a separate statutory scheme: the current Federal Rules of Criminal Procedure, as amended in 2002. That year — after the D.C. Court of Appeals' decision in Hackney, Section 11-1916(a)'s recodification in 1986, and the D.C. Circuit's opinion in Seals — Congress adopted the Federal Rules Committee's proposed amendments. See 28 U.S.C. §§ 2072, 2074 (permitting Supreme Court to promulgate rules of procedure, requiring submission to Congress for consideration before effective date); Fed. R. Crim. P. 1 Notes (amended Apr. 29, 2002). Relevant here, those amendments modified Rule 6(a)(1) to read (as it does today): "When the public interest so requires, the court must order that one or more grand juries be summoned." (emphasis added). The amendments also defined "court" for the first time in Rule 1(b)(2) as "a federal judge performing functions authorized by law." And all parties agree that the term "court" does not include D.C. Superior Court. See Tr. at 4:20–22 (Government agreeing that "plain text" of Rules "exclude[s] D.C. local courts from the definition of court"). The defense thus contends that a D.C. Superior Court grand jury was not convened by a "court" in accordance with the Federal Rules, and any indictment returned by such a grand jury is invalid under those Rules. See generally Resp. at 10–16.

At first blush, this position makes sense. The text of the Federal Rules of Criminal Procedure offers a single path to formally charge a defendant with a felony in federal court: via indictment returned by a grand jury, which in turn is convened by a federal (not D.C. Superior) "court." The Federal Rules, furthermore, "govern the procedure in all criminal proceedings in

11

the United States district courts." Rule 1(a)(1). Indeed, "one of the central purposes of the Rules was to make uniform the practices of all the district courts." United States v. Wallace & Tiernan, Inc., 349 F.2d 222, 226 (D.C. Cir. 1965). It follows that an indictment obtained through a different path — namely, by a non-federal grand jury — does not comply with the Rules' strictures, and is thus invalid. Accord Resp. at 10 ("The Federal Rules require that an indictment be returned by a grand jury of the federal court.") (formatting altered). Magistrate Judge Faruqui adopted this interpretation. See Order at 5–8.

The problem with such an approach is that the Advisory Committee Note to the 2002 Amendment characterizes most of the changes to Rule 6 as "stylistic," intended to make the Rules "more easily understood and to make style and terminology consistent throughout the rules." While not dispositive, "Advisory Committee Notes provide a reliable source of insight into the meaning of a rule, especially when, as here, the rule was enacted precisely as the Advisory Committee proposed." United States v. Vonn, 535 U.S. 55, 64 n.6 (2002). Here, the notes emphasize several times over that the 2002 amendments were a "general restyling" without changes in "substance" or "practice" except "as noted" specifically. See Rule 6, Committee Notes on Rules — 2002 Amendment. The note accompanying the newly added definition of "court" describes the term as "almost always synonymous with the term 'district judge,'" but clarified to include "magistrate judges" and "circuit judges who may be authorized to hold a district court." Rule 1, Committee Notes on Rules — 2002 Amendment.

Read together, the 2002 Amendment and its Advisory Committee Notes do not alter preexisting jurisdictional arrangements. For example, while "court" was not defined in the pre-2002 Rules, see Rule 54 (2001) (transferred 2002), circuit judges authorized to sit as a district court certainly fell within the pre-2002 definition of "court," despite subverting the pre-2002

"traditional view that 'court' means district judge."  Rule 1, Committee Notes on Rules — 2002 Amendment; see also United States v. Cabrera-Sarmiento, 533 F. Supp. 799 (S.D. Fla. 1982) (circuit judge sitting by designation ruling on motion to dismiss indictment).  The 2002 Amendments are best read as adding clarity without disturbing the status quo.  As previously discussed, that existing status quo included an exception to the Federal Rules of Criminal Procedure for D.C.'s unique grand-jury system.  See supra Section II.B.1; cf. also Cook Cnty. v. United States ex rel. Chandler, 538 U.S. 119, 130 (2003) (when Congress changes statutory context surrounding term, here increasing punitive damages available against a "person," it "does not follow" that the change "has the force to show congressional intent to repeal implicitly the existing definition" of that statutory term).

Accepting the defense's reading also requires a more difficult corollary: that non-substantive, seemingly unrelated amendments to the Federal Rules rendered Section 11-1916(a) meaningless.  The defense originally proposed a statutory interpretation that would harmonize Section 11-1916(a) and the Federal Rules by permitting federal grand juries to return indictments to Superior Court but not the converse.  See Resp. at 28; see also Order at 10 (acknowledging same potential interpretation).  During the hearing before this Court, however, it acknowledged that changes to the D.C. Superior Court Rules of Criminal Procedure — which reflected their federal counterparts and included a complementary definition of "court" that excludes federal judges, see D.C. Sup. Ct. R. Crim. P. 1(d)(3), (5) — would also prohibit a federal grand jury from returning a local indictment.  See generally Tr. at 14:7–15:20.  Such an interpretation of the 2002 Amendment, and its local counterpart, would nullify Section 11-1916(a).

As discussed above, grand juries investigate, indict, and do little else.  To conclude that Congress intended to gut Section 11-1916(a)'s application to one of those two functions

13

(indictment), this Court would require evidence of a "clear and manifest" legislative intention to do so. Nat'l Ass'n of Home Builders v. Def. of Wildlife, 551 U.S. 644, 663 (2007) (quoting Posadas v. Nat'l City Bank, 296 U.S. 497, 503 (1936)). Because none exists, this Court will not infer such a repeal. See also id. (absent "irreconcilable conflict" or clear substitute, "a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum") (internal quotation marks and citations omitted); see also Epic Sys. Corp. v. Lewis, 584 U.S. 497, 510 (2018) (recognizing "strong presumption that repeals by implication are disfavored") (alterations and quotation marks removed).

  A final wrinkle concerns the removal of a comment to D.C. Superior Court Rule of Criminal Procedure 6. Until 2015, the Rule "recognize[d] that a grand jury summoned by the Superior Court may return indictments in either the Superior Court or the United States District Court." D.C. Sup. Ct. R. Crim. P. 6 comment (2015) (removed 2016). The Superior Court Rules Committee removed that comment in its 2016 Amendment. See D.C. Sup. Ct. R. Crim. P. 6 comment (2016). The defense contends that this change indicates that the Rules Committee understood its own amendment (which mirrored the 2002 Amendment to the Federal Rules) to reflect the post-2002 nullification of Section 11-1916(a). See Tr. at 14:7–15:20. Maybe so. But the Rules Committee did not edit the comment or explain whether it had removed it for purely stylistic reasons or to reflect its altered understanding of the local grand jury's authority. Even if there were no doubt as to what the Committee understood itself to be doing, that conclusion is not binding on this Court, nor can a change to the comments of D.C. Superior Court Rules overcome a federal statutory provision.

  The defense also sounds the alarm about the practical consequences of the Government's position. As interpreted by this Court, the D.C. Code provision would permit the Government to

14

bring <u>any</u> criminal matter before a local grand jury for indictment, including "a capital case, treason, RICO, sedition," and other crimes thought to be reserved for the federal courts. <u>See</u> Tr. 7:19–8:18 (Government agreeing "no limit" on "kinds of federal crimes" brought to local grand jury). What is more, the Government could choose to circumvent the federal grand jury altogether and decide it "will never take a case to a federal grand jury." <u>Id.</u> at 8:10. Both of these scenarios are indeed troubling — even if neither has occurred yet — but the remedy would lie with Congress, not this Court, to correct such systematic (if hypothetical) avoidance of the federal grand jury.

### III.     Conclusion

For the reasons discussed above, the Court will order the criminal-duty magistrate judge to accept the indictment in this case. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  November 20, 2025