APPEAL

# U.S. District Court
## District of Columbia (Washington, DC)
## CRIMINAL DOCKET FOR CASE #: <u>1:25−mj−00225−ZMF</u>−1
### *Internal Use Only*

Case title: USA v. STEWART                     Date Filed: 09/18/2025

Assigned to: Magistrate Judge Zia
M. Faruqui

**<u>Defendant (1)</u>**

**KEVONTAE STEWART**         represented by   **H. Heather Shaner**
LAW OFFICES OF H. HEATHER SHANER
1702 S Street, NW
Washington, DC 20009
(202) 265−8210
Fax: (202) 332−8057
Email: hhsesq@aol.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew Farley**
FEDERAL PUBLIC DEFENDER
625 Indiana Ave NW
Suite 550
Washington, DC 20004
202−208−7500
Email: matthew_farley@fd.org
*ATTORNEY TO BE NOTICED*

**Michelle M. Peterson**
FEDERAL PUBLIC DEFENDER FOR THE
DISTRICT OF COLUMBIA
625 Indiana Avenue, NW
Suite 550
Washington, DC 20004
(202) 208−7500 ext 125
Fax: (202) 208−7515
Email: shelli_peterson@fd.org
*ATTORNEY TO BE NOTICED*

**<u>Pending Counts</u>**                     **<u>Disposition</u>**

None

**<u>Highest Offense Level</u>**
**<u>(Opening)</u>**

1

None

**Terminated Counts**                                    **Disposition**

None

**Highest Offense Level
(Terminated)**

None

**Complaints**                                           **Disposition**

COMPLAINT in violation of
18:922(g)(1)

---

**Plaintiff**

**USA**                                  represented by   **Caelainn Carney**
                                                          DOJ−USAO
                                                          601 D Street NW
                                                          Ste 3.235
                                                          Washington, DC 20004
                                                          202−714−6433
                                                          Email: caelainn.carney@usdoj.gov
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Designation: Assistant U.S. Attorney*

                                                          **Jonathan R. Hornok**
                                                          U.S. DEPARTMENT OF JUSTICE
                                                          Narcotic and Dangerous Drug Section
                                                          145 N Street, NE
                                                          Ste 2e300
                                                          Washington, DC 20530
                                                          202−913−4796
                                                          Email: jonathan.hornok@usdoj.gov
                                                          *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/18/2025 | 1 | COMPLAINT as to KEVONTAE STEWART (1). (Attachments: # 1 Statement of Facts) (zmcg) (Entered: 09/18/2025) |
| 09/18/2025 | | Arrest of KEVONTAE STEWART. (znjb) (Entered: 09/18/2025) |
| 09/18/2025 | 3 | Arrest Warrant Returned Executed on 9/18/2025 as to KEVONTAE STEWART. (znjb) (Entered: 09/18/2025) |
| 09/18/2025 | | MINUTE ORDER as to KEVONTAE STEWART: As required by Rule 5(f), the United States is ordered to produce all exculpatory evidence to the defendant pursuant to Brady v. Maryland and its progeny. Not doing so in a timely manner may result in |

| | | |
|---|---|---|
| | | sanctions, including exclusion of evidence, adverse jury instructions, dismissal of charges and contempt proceedings. Signed by Magistrate Judge Zia M. Faruqui on 9/18/2025. (znjb) (Entered: 09/18/2025) |
| 09/18/2025 | 5 | NOTICE OF ATTORNEY APPEARANCE: H. Heather Shaner appearing for KEVONTAE STEWART (Shaner, H.) (Entered: 09/18/2025) |
| 09/18/2025 | | ORAL MOTION to Appoint Counsel by KEVONTAE STEWART. (znjb) (Entered: 09/19/2025) |
| 09/18/2025 | | ORAL MOTION for Temporary Detention by USA as to KEVONTAE STEWART. (znjb) (Entered: 09/19/2025) |
| 09/18/2025 | | Minute Entry for proceedings held before Magistrate Judge Zia M. Faruqui: Return on Arrest Warrant/Initial Appearance as to KEVONTAE STEWART held on 9/18/2025. The Court advised the Government of its Due Process Obligations under Rule 5(f). Oral Motion to Appoint Counsel as to KEVONTAE STEWART; heard and granted. Oral Motion by the Government for Temporary Detention (3 day hold) as to KEVONTAE STEWART; heard and granted. Detention Hearing set for 9/19/2025 at 1:30 PM in Courtroom 7− In Person before Magistrate Judge Matthew J. Sharbaugh. Medical/Mental Health Alert issued to the Department of Corrections Medical Unit as to KEVONTAE STEWART. Bond Status of Defendant: Defendant Held Without Bond; Court Reporter: FTR− GOLD; FTR Time Frame: CRTM 4: [3:50:39−4:03:40]; Defense Attorney: Heather Shaner; US Attorney: Caelainn Carney; Pretrial Officer: Britney Dahlkoetter. (znjb) (Entered: 09/19/2025) |
| 09/19/2025 | 6 | MEMORANDUM in Support of Pretrial Detention by USA as to KEVONTAE STEWART (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(Carney, Caelainn) (Entered: 09/19/2025) |
| 09/19/2025 | | ORAL MOTION to Commit Defendant to Custody of Attorney General by USA as to KEVONTAE STEWART. (znjb) (Entered: 09/19/2025) |
| 09/19/2025 | | ORAL MOTION for Release from Custody by KEVONTAE STEWART. (znjb) (Entered: 09/19/2025) |
| 09/19/2025 | | ORAL MOTION for Speedy Trial by USA as to KEVONTAE STEWART. (znjb) (Entered: 09/19/2025) |
| 09/19/2025 | | Minute Entry for proceedings held before Magistrate Judge Matthew J. Sharbaugh: Detention Hearing as to KEVONTAE STEWART held on 9/19/2025. Oral Motion by the Government to Commit Defendant to Custody of Attorney General as to KEVONTAE STEWART; heard and granted. Oral Motion for Release from Custody as to KEVONTAE STEWART; heard and denied. Oral Motion by the Government for Speedy Trial as to KEVONTAE STEWART; heard and denied. Preliminary Hearing set for 9/30/2025 at 9:30 AM in Courtroom 4− In Person before Magistrate Judge Zia M. Faruqui. Medical/Mental Health Alert issued to the Department of Corrections Medical Unit as to KEVONTAE STEWART. Bond Status of Defendant: Defendant Committed/Commitment Issued; Court Reporter: FTR− GOLD; FTR Time Frame: CRTM 7: [1:39:48−2:11:39][RECESS: 2:11:40−2:30:10][2:30:11−2:44:10]; Defense Attorney: Heather Shaner; US Attorney: Caelainn Carney; Pretrial Officer: Lakeisha Forbes; Witness: Proposed 3rd Party Custodian: Tara Heard− Cousin. (znjb) (Entered: 09/19/2025) |
| 09/19/2025 | 10 | |

| | | |
|---|---|---|
| | | ORDER OF DETENTION PENDING TRIAL − Defendant Held Without Bond as to KEVONTAE STEWART. Signed by Magistrate Judge Matthew J. Sharbaugh on 9/19/2025. (zltp) (Entered: 09/26/2025) |
| 09/21/2025 | 7 | NOTICE *of Discovery* by USA as to KEVONTAE STEWART (Carney, Caelainn) (Entered: 09/21/2025) |
| 09/26/2025 | 9 | Report of a Grand Jury's Failure to Concur in an Indictment by USA as to KEVONTAE STEWART. (zltp) (Entered: 09/26/2025) |
| 09/26/2025 | | NOTICE OF HEARING as to KEVONTAE STEWART: Emergency Status Hearing set for 9/26/2025 at 3:30 PM in Telephonic/VTC before Magistrate Judge Matthew J. Sharbaugh. (zltp) (Entered: 09/26/2025) |
| 09/26/2025 | | ORAL MOTION to Dismiss Case by KEVONTAE STEWART. (zltp) (Entered: 09/26/2025) |
| 09/26/2025 | | ORAL MOTION for Release from Custody by KEVONTAE STEWART. (zltp) (Entered: 09/26/2025) |
| 09/26/2025 | | Minute Entry for proceedings held before Magistrate Judge Matthew J. Sharbaugh: Emergency Status Hearing as to KEVONTAE STEWART held on 9/26/2025. Defendant's presence waived for purposes of this matter. Oral Motion to Dismiss Case as to KEVONTAE STEWART (1); heard and denied, for reasons stated on the record. Oral Motion for Release from Custody as to KEVONTAE STEWART (1); heard and granted. Status Hearing set for 9/29/2025 at 12:30 PM in Courtroom 7− IN PERSON before Magistrate Judge Matthew J. Sharbaugh. Bond Status of Defendant: Defendant Release/Release Issued; Court Reporter: FTR Gold; FTR Time Frame: CTRM 7: [3:31:40 − 3:48:49]; Defense Attorney: Heather Shaner; US Attorney: Caelainn Carney; Pretrial Officer: Da'Shanta Lewis. (zltp) (Entered: 09/26/2025) |
| 09/29/2025 | | Minute Entry for proceedings held before Magistrate Judge Matthew J. Sharbaugh: Status Hearing as to KEVONTAE STEWART held on 9/29/2025. Defendant present in court and sworn into Conditions of Release. Preliminary Hearing set for 10/9/2025 at 11:30 AM in Courtroom 5− In Person before Magistrate Judge Moxila A. Upadhyaya. Bond Status of Defendant: Defendant remain on Personal Recognizance; Court Reporter: FTR Gold; FTR Time Frame: CTRM 7: [12:40:47 − 12:57:43]; Defense Attorney: Heather Shaner; US Attorney: Jacob Green for Caelainn Carney; Pretrial Officer: Da'Shanta Lewis. (zltp) (Entered: 09/29/2025) |
| 09/29/2025 | 11 | ORDER Setting Conditions of Release as to KEVONTAE STEWART (1): Personal Recognizance. Signed by Magistrate Judge Matthew J. Sharbaugh on 9/29/2025. (Attachments: # 1 Appearance Bond) (zltp) (Entered: 09/29/2025) |
| 09/29/2025 | 12 | ORDER as to KEVONTAE STEWART. Signed by Magistrate Judge Zia M. Faruqui on 9/29/2025. (znjb) (Main Document 12 replaced on 9/30/2025) (ztl). (Entered: 09/29/2025) |
| 10/01/2025 | 13 | TRANSCRIPT OF STATUS CONFERENCE in case as to KEVONTAE STEWART before Magistrate Judge Matthew J. Sharbaugh held on September 29, 2025; Page Numbers: 1−13. Date of Issuance: October 1, 2025. Court Reporter/Transcriber Sonja L. Reeves, RDR, CRR, Telephone number (202) 354−3246, Transcripts may be ordered by submitting the Transcript Order Form |

| | | |
|---|---|---|
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 10/22/2025. Redacted Transcript Deadline set for 11/1/2025. Release of Transcript Restriction set for 12/30/2025.(Reeves, Sonja) (Entered: 10/01/2025) |
| 10/02/2025 | 14 | TRANSCRIPT OF GRAND JURY RETURN in case as to KEVONTAE STEWART before Magistrate Judge Zia M. Faruqui held on September 29, 2025; Page Numbers: 1−9. Court Reporter/Transcriber Sonja L. Reeves, RDR, CRR, Telephone number (202) 354−3246, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 10/23/2025. Redacted Transcript Deadline set for 11/2/2025. Release of Transcript Restriction set for 12/31/2025.(Reeves, Sonja) (Entered: 10/02/2025) |
| 10/02/2025 | 15 | RESPONSE TO ORDER OF THE COURT by USA as to KEVONTAE STEWART re 12 Order *(Emergency Request to Vacate)* (Hornok, Jonathan) (Entered: 10/02/2025) |
| 10/02/2025 | | MINUTE ORDER as to KEVONTAE STEWART (1) re 15 Response to Order of the Court filed by USA : The Court ORDERS a hearing set for October 3, 2025, at 02:30 PM in Courtroom 22A− In Person before Chief Judge James E. Boasberg. So ORDERED by Chief Judge James E. Boasberg on 10/3/2025. (znbn) (Entered: 10/02/2025) |
| 10/03/2025 | 16 | SUPPLEMENT by USA as to KEVONTAE STEWART re 15 Response to Order of the Court (Attachments: # 1 Exhibit The transcript of the grand jury return proceeding before Magistrate Judge Zia M. Faruqui on September 29, 2025, # 2 Exhibit The New York Times article titled In Unusual Move, Prosecutors Secure Federal Charges From Local Grand Jury: A judge, Zia M. Faruqui, said that what appeared to be a kind of grand jury forum shopping seemed to have broken decades−long norms and the rule of law, which was published on September 20, 2025, and which quotes Judge Faruqui, # 3 |

| | | |
|---|---|---|
| | | Exhibit The New York Times article titled Judges Openly Doubt Government as Justice Dept. Misleads and Dodges Orders: Legal experts say the actions causing concern from the bench could have a more systemic effect, eroding the healthy functioning of the courts, which was published on August 4, 2025, and which quotes Judge Faruqui, # 4 Exhibit The federal indictment returned by a Superior Court grand jury in United States v. Seals, No. 95−CR−0284 (D.D.C. Oct. 31, 1995), ECF 1, # 5 Exhibit The federal indictment returned by a Superior Court grand jury in United States v. Clark, No. 18−cr−338 (D.D.C. Nov. 15, 2018), ECF 6, # 6 Exhibit The federal indictment returned by a Superior Court grand jury in United States v. Clark, No. 18−cr−338 (D.D.C. Nov. 15, 2018), ECF 6)(Hornok, Jonathan) (Entered: 10/03/2025) |
| 10/03/2025 | | MINUTE ORDER as to KEVONTAE STEWART (1): As this is a criminal proceeding, no public access line will be available. Members of the public may attend the hearing in person. So ORDERED by Chief Judge James E. Boasberg on 10/3/2025. (znbn) (Entered: 10/03/2025) |
| 10/03/2025 | | Minute Entry for Motion Hearing held on 10/3/2025 before Chief Judge James E. Boasberg: As set forth on the record after oral argument, the Court will DENY 15 Response to Order of the Court filed by USA. Bond Status of Defendant: NOT PRESENT/PRESENCE WAIVED; Court Reporter: Tammy Nestor; Defense Attorney: Michelle Peterson; US Attorney: Jonathan Hornok. (znbn) (Entered: 10/03/2025) |
| 10/03/2025 | 17 | RESPONSE TO ORDER OF THE COURT by USA as to KEVONTAE STEWART re 12 Order (Hornok, Jonathan) (Entered: 10/03/2025) |
| 10/07/2025 | 18 | NOTICE OF ATTORNEY APPEARANCE: Michelle M. Peterson appearing for KEVONTAE STEWART (Peterson, Michelle) (Entered: 10/07/2025) |
| 10/07/2025 | 19 | NOTICE OF ATTORNEY APPEARANCE: Matthew Farley appearing for KEVONTAE STEWART (Farley, Matthew) (Entered: 10/07/2025) |
| 10/07/2025 | 20 | NOTICE of Discovery by USA as to KEVONTAE STEWART (Carney, Caelainn) (Entered: 10/07/2025) |
| 10/07/2025 | 21 | RESPONSE TO ORDER OF THE COURT by KEVONTAE STEWART re 12 Order (Farley, Matthew) (Entered: 10/07/2025) |
| 10/08/2025 | | Set/Reset Hearings as to KEVONTAE STEWART: Preliminary Hearing set for 10/9/2025 at 11:30 AM in Courtroom 4− In Person before Magistrate Judge Zia M. Faruqui. (ztl) (Entered: 10/08/2025) |
| 10/08/2025 | 22 | MOTION for Disclosure 6(e) permission by USA as to KEVONTAE STEWART. (Carney, Caelainn) (Entered: 10/08/2025) |
| 10/08/2025 | 23 | REPLY by USA as to KEVONTAE STEWART re 21 Response to Order of the Court (Hornok, Jonathan) (Entered: 10/08/2025) |
| 10/09/2025 | | Minute Entry for proceedings held before Magistrate Judge Zia M. Faruqui: Status Hearing as to KEVONTAE STEWART held on 10/9/2025. The Government will seek an appeal before the Chief Judge. The Preliminary Hearing will be 'STAYED' pending appeal. Opinion forthcoming. Bond Status of Defendant: Defendant Remain on Personal Recognizance; Court Reporter: FTR−GOLD; FTR Time Frame: CTRM 4: [11:52:32−12:07:11]; Defense Attorney: Heather Shaner, Shelli Peterson, Matthew Farley; US Attorney: Caelainn Carney; Pretrial Officer: Da'Shanta Lewis; Court Reporter: Christine Asif. (ztl) (Entered: 10/09/2025) |

| 10/09/2025 | 24 | ORDER as to KEVONTAE STEWART. Signed by Magistrate Judge Zia M. Faruqui on 10/9/2025. (znjb) (Entered: 10/09/2025) |
|---|---|---|
| 10/14/2025 | | MINUTE ORDER as to KEVONTAE STEWART: At the October 9, 2025 hearing, the Pretrial Services Agency informed the court that the defendant was no longer requesting to change his place of residence to North Carolina. As such the conditions of supervision are modified to remain as initially ordered. Defendant is to stay at the residence where he is currently residing. All other conditions of release remain as originally ordered. Signed by Magistrate Judge Zia M. Faruqui on 10/14/2025. (zltp) (Entered: 10/14/2025) |
| 10/14/2025 | 25 | MOTION TO REVIEW JUDGE FARUQUIS ORDER REFUSING TO ACCEPT A GRAND JURY RETURN by USA as to KEVONTAE STEWART re 24 Order *(Request for review by the Chief Judge)* (Hornok, Jonathan) Modified event type and text on 10/15/2025 (zmcg). (Entered: 10/14/2025) |
| 10/15/2025 | 26 | NOTICE *of Proposed Briefing Schedule* by KEVONTAE STEWART (Farley, Matthew) (Entered: 10/15/2025) |
| 10/16/2025 | | MINUTE ORDER as to KEVONTAE STEWART (1): Pursuant to the 26 Proposed Briefing Schedule, the Court ORDERS that: 1) Defendant shall file any response to the Government's 25 Motion by October 20, 2025; 2) The Government shall file any reply by October 23, 2025; and 3) The parties shall appear for a hearing on October 28, 2025, at 2:30 p.m. So ORDERED by Chief Judge James E. Boasberg on 10/16/2025. (znbn) (Entered: 10/16/2025) |
| 10/17/2025 | 27 | NOTICE *of Discovery* by USA as to KEVONTAE STEWART (Carney, Caelainn) (Entered: 10/17/2025) |
| 10/20/2025 | 28 | RESPONSE by KEVONTAE STEWART re 25 MOTION to Review (Farley, Matthew) (Entered: 10/20/2025) |
| 10/23/2025 | 29 | REPLY in Support by USA as to KEVONTAE STEWART re 25 MOTION to Review (Hornok, Jonathan) (Entered: 10/23/2025) |
| 10/23/2025 | 30 | NOTICE *of Exhibit* by USA as to KEVONTAE STEWART re 29 Reply in Support (Hornok, Jonathan) (Entered: 10/23/2025) |
| 10/28/2025 | 31 | MOTION Waive IN Person Apperance at Hearing by KEVONTAE STEWART. (Shaner, H.) (Entered: 10/28/2025) |
| 10/28/2025 | | MINUTE ORDER as to KEVONTAE STEWART (1), GRANTING 31 Motion Waive in Person Appearance at Hearing. So ORDERED by Chief Judge James E. Boasberg on 10/28/2025. (znbn) (Entered: 10/28/2025) |
| 10/28/2025 | | Minute Entry for proceedings held before Chief Judge James E. Boasberg: Motion Hearing as to KEVONTAE STEWART (1) held on 10/28/2025 re 25 MOTION to Review filed by USA. Oral argument heard; motion taken under advisement. Bond Status of Defendant: NOT PRESENT / PRESENCE WAIVED; Court Reporter: Tammy Nestor; Defense Attorney: Matthew Farley and Michelle Peterson; US Attorney: Jonathan Hornok. (znbn) (Entered: 10/28/2025) |
| 10/29/2025 | 32 | TRANSCRIPT OF PROCEEDINGS in case as to KEVONTAE STEWART before Chief Judge James E. Boasberg held on 10/28/25; Page Numbers: 1−28. Court Reporter/Transcriber Tammy Nestor, tammy_nestor@dcd.uscourts.gov, Transcripts may be ordered by submitting the Transcript Order Form |

7

| | | |
|---|---|---|
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 11/19/2025. Redacted Transcript Deadline set for 11/29/2025. Release of Transcript Restriction set for 1/27/2026.(Nestor, Tammy) (Entered: 10/29/2025) |
| 11/12/2025 | 33 | Consent MOTION for Protective Order *Grand Jury* by USA as to KEVONTAE STEWART. (Carney, Caelainn) (Entered: 11/12/2025) |
| 11/12/2025 | 34 | MOTION for Bond *Modification to Permit Travel for Thanksgiving* by KEVONTAE STEWART. (Shaner, H.) (Entered: 11/12/2025) |
| 11/12/2025 | 35 | ORDER as to KEVONTAE STEWART (1), granting 33 Motion for Protective Order. Signed by Chief Judge James E. Boasberg on November 12, 2025. (znbn) (Entered: 11/12/2025) |
| 11/12/2025 | 36 | ORDER as to KEVONTAE STEWART (1), granting 22 Motion for Disclosure. Signed by Chief Judge James E. Boasberg on November 12, 2025. (znbn) (Entered: 11/13/2025) |
| 11/13/2025 | | NOTICE OF HEARING as to KEVONTAE STEWART: Motion Hearing set for 11/14/2025 at 11:00 AM in Courtroom 7− In Person before Magistrate Judge Matthew J. Sharbaugh. (znjb) (Entered: 11/13/2025) |
| 11/14/2025 | | Minute Entry for proceedings held before Magistrate Judge Matthew J. Sharbaugh: Motion Hearing as to KEVONTAE STEWART held on 11/14/2025. Defense 34 Motion for Bond Modification to Permit Travel for Thanksgiving as to KEVONTAE STEWART; heard and granted. Minute Order to be issued. Bond Status of Defendant: Defendant remain on Personal Recognizance/HISP; Court Reporter: FTR− GOLD; FTR Time Frame: CRTM 7: [11:02:54−11:15:40]; Defense Attorney: Heather Shaner; US Attorney: Caelainn Carney; Pretrial Officer: Da'Shanta Lewis; Witness: Tequanitha Stewart− Mother. (znjb) (Entered: 11/14/2025) |
| 11/14/2025 | | MINUTE ORDER as to KEVONTAE STEWART (1): For the reasons stated in the motion and on the record, the Court GRANTS Defendant's 34 motion to permit travel. Mr. Stewart's conditions of release are modified for the limited and temporary purpose of permitting him to travel to his mother's residence in Concord, North Carolina for the upcoming Thanksgiving holiday, leaving November 25 and returning to Washington, DC on November 30, 2025. Mr. Stewart must coordinate in advance with PSA concerning his departure and arrival times on the dates of travel. SO ORDERED. Signed by Magistrate Judge Matthew J. Sharbaugh on 11/14/2025. (znjb) (Entered: 11/14/2025) |
| 11/20/2025 | 37 | STAYED PURSUANT TO THE MINUTE ORDER ISSUED ON 11/24/2025.....ORDER as to KEVONTAE STEWART (1): As set forth in the |

| | | |
|---|---|---|
| | | accompanying Memorandum Opinion, the Court ORDERS that: 1) The Government's 25 Motion to Review the Order Refusing to Accept a Grand Jury Return is GRANTED; and 2) The Magistrate Judge on criminal duty shall accept the indictment in this matter. Signed by Chief Judge James E. Boasberg on November 20, 2025. (znbn) Modified on 11/24/2025 (znbn). (Entered: 11/20/2025) |
| 11/20/2025 | 38 | MEMORANDUM OPINION as to KEVONTAE STEWART re 37 Order. Signed by Chief Judge James E. Boasberg on November 20, 2025. (znbn) (Entered: 11/20/2025) |
| 11/21/2025 | 39 | MOTION to Stay *Order of the Court* by KEVONTAE STEWART. (Farley, Matthew) (Entered: 11/21/2025) |
| 11/21/2025 | | MINUTE ORDER as to KEVONTAE STEWART (1): The Court ORDERS that the Government shall file any Response to Defendant's 39 Motion to Stay by November 24, 2025, at 12:00 noon. So ORDERED by Chief Judge James E. Boasberg on November 21, 2025. (znbn) (Entered: 11/21/2025) |
| 11/21/2025 | 40 | Memorandum in Opposition by USA as to KEVONTAE STEWART re 39 MOTION to Stay *Order of the Court and Government's Motion for Hearing* (Carney, Caelainn) (Entered: 11/21/2025) |
| 11/24/2025 | | MINUTE ORDER as to KEVONTAE STEWART (1) : The Court ORDERS that Defendant's 39 Motion for Stay is GRANTED, and the Court's 37 Order shall be STAYED through December 1, 2025. The Court agrees with Defendant that the factors articulated in Nken v. Holder, 556 U.S. 418, 434 (2009), militate in favor of a brief stay. So ORDERED by Chief Judge James E. Boasberg on November 24, 2025. (znbn) (Entered: 11/24/2025) |
| 11/26/2025 | 41 | NOTICE OF APPEAL (Interlocutory) by KEVONTAE STEWART re 37 Order on Motion for Review,. Fee Status: No Fee Paid, Defendant is Represented by FPD. Parties have been notified. (Farley, Matthew) Modified text on 11/26/2025 (zmcg). (Entered: 11/26/2025) |
| 11/26/2025 | 42 | MOTION to Stay *Pending Appeal* by KEVONTAE STEWART. (Peterson, Michelle) (Entered: 11/26/2025) |

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| **Plaintiff,** | : | |
| **vs.** | : | **Case No.: 25-mj-225** |
| **KEVONTAE STEWART** | : | |
| **Defendant.** | : | |

# NOTICE OF APPEAL

**Name and address of appellant:**          Kevontae Stewart

**Name and address of appellant's attorney:**     Matthew L. Farley
                                                    Assistant Federal Public Defender
                                                    Office of the Federal Public Defender
                                                    625 Indiana Ave., N.W., Suite 550
                                                    Washington, DC 20004


**Concise statement of judgment or order, giving date, and any sentence:** District Court's order directing the magistrate court to accept an indictment returned by a grand jury established by the District of Columbia Superior Court. The Order (ECF No. 37) and Memorandum Opinion (ECF No. 38) were issued on November 20, 2025.


**Name and institution where now confined, if not on bail:** N/A


**I, the above-named appellant, hereby appeal to the United States Court of Appeals for the District of Columbia from the above-stated judgment.**


Nov. 26, 2025                                    KEVONTAE STEWART____
DATE                                             APPELLANT

CJA, NO FEE _____FPD_____                  A. J. Kramer_____
PAID USDC FEE ___NO_____                    FEDERAL PUBLIC DEFENDER
PAID USCA FEE ___NO_____                    ATTORNEY FOR APPELLANT

Does counsel wish to appear on appeal? Yes
Has counsel ordered transcripts? No
Is this appeal pursuant to the 1984 Sentencing Reform Act? No

10

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **v.** | **Magistrate Judge No. 25-225** |
| **KEVONTAE STEWART,** | |
| **Defendant.** | |

## ORDER

As set forth in the accompanying Memorandum Opinion, the Court ORDERS that:

1.    The Government's [25] Motion to Review the Order Refusing to Accept a Grand
Jury Return is GRANTED; and

2.   The Magistrate Judge on criminal duty shall accept the indictment in this matter.


*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge


Date:  November 20, 2025

1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

v.                                              **Magistrate Judge No. 25-225**

KEVONTAE STEWART,

Defendant.

<u>**MEMORANDUM OPINION**</u>

After failing to secure an indictment from a federal grand jury sitting in this district, the

Government turned to a D.C. Superior Court grand jury, asking for an indictment for the same

violation of federal criminal law.  That local grand jury returned a true bill, which the

Government delivered to one of our federal magistrate judges.  Understandably surprised by this

unorthodox approach, he initially refused to accept the return and asked for briefing on whether

this course was legally permissible.  After such briefing, he wrote a thoughtful opinion

concluding that he had no power to accept the indictment.  The Government appealed to this

Court.

This issue is challenging, as dueling statutory sources provide contradictory answers.  A

provision of the D.C. Code ostensibly permits local grand juries to return indictments in federal

court, while the Federal Rules of Criminal Procedure arguably say the opposite.  The Court

ultimately holds that the D.C. Code prevails, and it thus orders the criminal-duty magistrate

judge to accept the indictment.

1

I.      **Procedural History**

On September 18, 2025, Kevontae Stewart was arrested.  <u>See</u> ECF No. 3 (Arrest Warrant).  The Government filed a Complaint alleging that he had possessed a firearm after previously being convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).  <u>See</u> ECF No. 1 (Crim. Compl.).  The Government sought an indictment from a federal grand jury, but that grand jury returned a no bill on September 26.  <u>See</u> ECF No. 9 (No Bill).  Rather than try its luck with a different federal grand jury, the Government presented its case to a Superior Court grand jury, which voted to return the indictment on the same federal charge.  <u>See</u> ECF No. 14 (MJ Tr.) at 2:12–17.  The Government then returned to federal court and presented the local indictment to Magistrate Judge Zia Faruqui on September 29.  <u>Id.</u> at 2:2–17.

At a hearing that day, Magistrate Judge Faruqui declined to accept the indictment return.  <u>Id.</u> at 4:17–19.  Noting that it was exceedingly unusual for the Government to seek an indictment for federal crimes from a local grand jury — and perhaps unprecedented to do so after a federal no bill — Magistrate Judge Faruqui ordered briefing on whether the law permitted such a maneuver.  <u>Id.</u> at 4:17–6:13.

Instead of engaging in such briefing, the Government filed an emergency request asking this Court to vacate Magistrate Judge Faruqui's order.  <u>See</u> ECF No. 15 (Emer. Req. Vacate).  It contended that he lacked the authority to refuse to receive the indictment because magistrate judges do not have the power to "dismiss or quash an indictment."  <u>Id.</u> at 10 (quoting 28 U.S.C. § 636(b)(1)(A)).  It further argued that briefing was unnecessary because the D.C. Code clearly permits a Superior Court grand jury to return an indictment in federal district court.  <u>Id.</u> at 8.  This Court held a hearing on October 3 and denied the Government's request for emergency relief, allowing the expedited briefing to go forward.  <u>See</u> Minute Entry of Oct. 3, 2025.

2

After briefing was complete, Magistrate Judge Faruqui penned an opinion, refusing to accept the local indictment of Stewart.  See ECF No. 24 (Order) at 1.  He held that the indictment was "facially invalid" because the Federal Rules of Criminal Procedure, as amended in 2002, require that a valid indictment be returned by a grand jury empaneled by a "court," id. at 5–6, which unequivocally excludes grand juries convened in D.C. Superior Court.  See Rule 1(b).  Magistrate Judge Faruqui further held that the relevant D.C. Code provision "cannot modify federal court procedural rules, nor can it . . . override the grand jury procedures expressly set forth in the Federal Rules that require indictments to be issued by a grand jury summoned by the federal court."  Id. at 8.

The Government then appealed the Order to this Court.  See ECF No. 25 (Mot. Rev.); see also LCrR 59.3(a) ("Requests for review of an order by a magistrate judge in a criminal matter not assigned to a district judge . . . are to be made to the Chief Judge . . . .").  It now renews its argument that the D.C. Code permits a local grand jury to return an indictment in federal court — and vice versa — and contends that the Federal Rules do not abrogate that authorization.  See generally Mot. Rev. at 6–10.  To hold otherwise, the Government argues, would constitute a "repeal by implication" of a D.C. Code provision by a seemingly unrelated amendment to the Federal Rules.  Id. at 11.  Defendant naturally takes the opposite view and urges affirmance of Magistrate Judge Faruqui's order.  See generally ECF No. 28 (Resp.).

## II.    Analysis

The Court initially examines whether a magistrate judge has authority to reject an indictment in the first place.  Finding that he does, the Court proceeds to discuss the propriety of the return in this case.

A.    <u>Magistrate Judge Authority</u>

Although it did not press this argument in its Motion for Review, the Government

contended before Magistrate Judge Faruqui and this Court during the emergency hearing that

magistrate judges have no power to reject a facially invalid indictment.  <u>See</u> Emergency Req.

Vacate at 10.  As it also seeks to "preserve that argument" for appeal, <u>see</u> ECF No. 32 (Tr.) at

3:14–15, the Court first addresses this question.

Magistrate judges' power comes from statutory, rather than constitutional, sources, and it

is thus subject to "the district court's total control and jurisdiction."  <u>Wellness Int'l Network, Ltd.</u>

<u>v. Sharif</u>, 575 U.S. 665, 677 (2015) (quotation marks omitted).  They cannot resolve certain

dispositive motions — say, a motion to "dismiss or quash an indictment."  28 U.S.C.

§ 636(b)(1)(A).  But accepting indictments, and ensuring that those indictments facially conform

to the Federal Rules of Criminal Procedure, falls within the heartland of a magistrate judge's

authority.  <u>See</u> Rule 6(f) (requiring grand jury to "return the indictment to a <u>magistrate judge</u> in

open court") (emphasis added).

Confirming that an indictment is returned by a grand jury authorized to return it is akin to

verifying that the document satisfies other features described in the Federal Rules of Criminal

Procedure.  Those features include that the indictment: 1) identifies one or more defendants; 2)

actually charges a crime, <u>see</u> Rule 7(c)(1); 3) is "signed by an attorney for the government," <u>id.</u>;

and 4) was returned by a particular grand jury.  <u>See</u> Rule 6(a); U.S. Const. amend. V  An

indictment's compliance with those requirements is apparent from the face of the document, and

a magistrate judge can require the Government to fix errors before accepting the indictment.  <u>See</u>

Order at 4 (noting Magistrate Judge Faruqui rejected "facially invalid indictment" where

Government "failed to present a charge to the grand jury . . . that was in its indictment").  Such

4

challenges are thus unlike ones that are appropriately brought via motions to dismiss — *e.g.*, "a defect in instituting the prosecution," like improper venue or error during the grand-jury proceeding, see Rule 12(b)(3)(A), or substantive challenges to the sufficiency of an indictment. See Rule 12(b)(3)(B).

Even if Congress wrested the indictment-return process from magistrate judges and directed clerks of court to file indictments upon receipt from the Government attorney, those clerks would still ministerially confirm that the filed document was in fact an indictment.  Cf., e.g., Villasenor v. Fairfield Police Dep't, 2011 WL 1599152, at *5–6 (E.D. Cal. Apr. 27, 2011) (clerk "returned as un-filed" document "written entirely in Spanish," which was appropriate since documents in language other than English did not "t[ake] the form of actual filings"); Sermeno v. Tang, 2025 WL 2722659, at *5 (N.D. Cal. Sep. 5, 2025) (permissible for state court clerk to reject filings for failure to "comply with technical formatting requirements"), adopted, 2025 WL 2721682.  It follows that magistrate judges, vested with statutory power to supervise indictment proceedings, can both verify that a document is actually an indictment and order briefing to resolve a discrete legal question regarding indictment requirements.  Cf. United States v. Seals, 130 F.3d 451, 457 (D.C. Cir. 1997) ("[T]he responsibility for issuing subpoenas and for accepting returned indictments is vested in United States magistrate judges.").

The Government's argument — that a magistrate judge cannot reject the return of a document that on its face is not a proper indictment — presents untenable implications.  Under its theory, a magistrate judge would be obligated to accept patently insufficient indictments, including those written in a foreign language or those returned by a grand jury in an entirely different jurisdiction.  See ECF No. 21 (Def. Emer. Resp.) at 4 (noting Government implied as much during hearing on emergency request to vacate briefing).  That would undermine

magistrate judges' administrative and supervisory authority over the grand jury and indictment process.

In this case, Magistrate Judge Faruqui received an indictment from a non-federal grand jury, which, absent a distinct provision of the D.C. Code, would undisputedly have been an invalid indictment in federal district court. See Tr. at 4:7–14 (government agreeing that authority of local grand jury to return indictment in federal court is "wholly reliant" on Section 11-1916(a)). If Magistrate Judge Faruqui were right on the merits, it would be as if the Government had presented him with an indictment returned from a court in Sweden. Both his decision to seek briefing on whether a local grand jury is authorized to return an indictment in federal court and his conclusion that magistrate judges can reject indictments returned by an unauthorized grand jury strike an appropriate balance between magistrate judges' circumscribed power and the need to verify that defendants are subject only to procedurally valid indictments. Cf. Costello v. United States, 350 U.S. 359, 363 (1956) (Fifth Amendment requires "[a]n indictment returned by a legally constituted . . . grand jury").

Nor is the ability of an indicted defendant to subsequently move for the dismissal of a patently invalid indictment a sufficient check. "[A] wrongful indictment is no laughing matter; often it works a grievous, irreparable injury to the person indicted." In re Fried, 161 F.2d 453, 458 (2d Cir. 1947). What is more, a defendant would be subject to unnecessary court appearances, the risk of pretrial detention, and collateral consequences like employment loss or family upheaval between when the indictment is returned and its inevitable dismissal. See also Klopfer v. North Carolina, 386 U.S. 213, 222 (1967) (noting "pendency of the indictment" subjects defendant to "public scorn," risks employment, and chills speech — all amounting to

6

"oppression"). When an indictment can be deemed plainly deficient as an administrative matter, there is no need to trigger those consequences.

The Court is thus convinced that a magistrate judge may reject an indictment that is facially invalid. It now turns to whether one returned by a local grand jury falls into that category.

B.    Power of Local Grand Jury

The merits present a much closer question. As the Court observed during argument on the Motion for Review, "[W]here [the analysis] begins is where it ultimately ends." Tr. at 13:20–21. Put another way, to answer which statutory authority governs is to resolve the case. The Court looks first at the Government's reliance on a D.C. Code provision and then examines the defense's counter with the Federal Rules of Criminal Procedure.

1.    *D.C. Code Section 11-1916(a)*

The Government starts with D.C. Code Section 11-1916(a). Originally enacted by Congress in 1970 and codified as Section 11-1903(a), that section provides: "A grand jury serving in the District of Columbia may take cognizance of all matters brought before it regardless of whether an indictment is returnable in the Federal or District of Columbia courts." See Pub. L. No. 91-358, 84 Stat. 515 (July 29, 1970). The text grants expansive authority: it covers any grand jury "serving in the District of Columbia," which would apply to grand juries convened by either District or Superior Court. It authorizes those grand juries to consider "all" matters before them, without restriction, and, for good measure, it clarifies that matters may be brought before either grand jury "regardless" of where a resulting indictment is returnable. Had Congress wanted to limit cross-jurisdictional power to certain issues, specific grand juries, or particular phases of the investigation and indictment process, it could easily have drafted a much

7

different statute with those limitations.  Cf. Consumer Fed. of Am. v. United States Dep't of Health & Human Servs., 83 F.3d 1497, 1503 n.6 (D.C. Cir. 1996) (statutory reading unlikely when Congress "presumably would have drafted the statute differently" to achieve obvious alternative outcome).  By its plain terms, Section 11-1916(a) appears to permit the Government to do what it did here: seek an indictment from a local grand jury, returnable in District Court.  To be clear, it also allows the reverse: a federal grand jury returning an indictment in Superior Court.

Our Circuit has concluded, albeit in *dicta*, that Section 11-1916(a) does indeed authorize a local grand jury to return a federal indictment.  In Seals, where a Superior Court grand jury indicted two defendants on the federal charges of conspiracy, kidnapping, and extortion and returned the indictment in federal court, our Court of Appeals rejected a constitutional challenge to Section 11-1916(a).  See 130 F.3d at 452.  The Circuit concluded that it did not encroach upon a defendant's right to be indicted by a grand jury simply because an Article I judge (*i.e.*, a D.C. Superior Court judge) supervised the grand-jury proceedings.  Id. at 458–60.  In so doing, it described Section 11-1916(a) as authorizing "a limited sharing of the supervisory power" with D.C. Superior Court judges, who could oversee local grand juries that returned indictments to District Court.  Id. at 459.  While Seals discussed the statutory meaning of Section 11-1916(a) only in *dicta*, it presumably would not have upheld the local grand jury's indictment as constitutional if it had thought that such a grand jury lacked the ability to indict a defendant in federal court at all.  See also id. at 453 (describing, without questioning, District Court's holding that Congress "validly authorized the D.C. Superior Court . . . to supervise a grand jury that can indict for both D.C. and federal offenses").

Two other courts in this district have assumed that Section 11-1916(a) authorizes precisely the type of indictment the local grand jury returned in this case.  See, e.g., United States v. Allen, 729 F. Supp. 120, 122 (D.D.C. 1989); United States v. Brown, 2007 WL 2007513, at *4 (D.D.C. July 9, 2007).  While none has squarely addressed the question before this Court — what Section 11-1916(a) means as a matter of statutory interpretation — the unanimity across courts indicates that other jurists took for granted that Section 11-1916(a) permits local and federal grand juries in D.C. to return indictments in either court.  That bolsters this Court's conclusion that Section 11-1916(a) authorizes such coextensive jurisdiction.

The defense points out that "take cognizance" does not self-evidently include the power to vote to return an indictment.  See Resp. at 20.  Stewart contends that the term instead only "speaks to a grand jury's investigative function."  Id. at 21 (emphasis added).  Under his reading, any grand jury sitting in a D.C. court (local or federal) would have the "power to investigate," no matter "where the object of the investigation may ultimately be indicted" — but could return an indictment only in the court that convened it.  Id.

While that reading is creative, the D.C. Court of Appeals has found that such an interpretation is "overly literal."  Hackney v. United States, 389 A.2d 1336, 1339 (D.C. 1978).  In Hackney, it rejected the argument that this code provision "permits a grand jury only to 'take cognizance' of a matter ultimately proper before another court, but not to return an indictment with respect to such matters."  Id.  Grand juries engage in two central activities: investigating potential crimes and voting on whether to return indictments in those matters.  United States v. Doe Corp., 59 F.4th 301, 304 (7th Cir. 2023) ("[T]he grand jury has broad authority to investigate potential wrongdoing and, if wrongdoing is discovered, to decide whether to return a criminal indictment.").  The breadth of the D.C. Code provision's terms — which permit grand

9

juries to "take cognizance" of "all matters" — is consistent with a jurisdictional grant covering all grand-jury functions, not one in particular.  <u>See</u> D.C. Code § 11-1916(a).  And because grand juries primarily investigate and indict, a statutory interpretation that hives off one of those two functions is unlikely absent specific words authorizing the grand jury only to investigate, probe, inquire, or take some similar action.  This Court agrees with the D.C. Court of Appeals that the best interpretation of Section 11-1916(a) allows D.C. grand juries to vote to return indictments in matters before it if those indictments are "returnable in Federal or District of Columbia courts."

The defense puts forth another argument: that Congress changed the terms of D.C. grand juries' authority when it passed the District of Columbia Jury System Act.  <u>See</u> Resp. at 22; Pub. L. No. 99-650, 100 Stat. 3635 (Nov. 14, 1986).  The Act split the previously unified jury-selection systems for District Court and Superior Court.  It also recodified then-Section 11-1903 as Section 11-1916, without any changes to the provision's language.  <u>Compare</u> Pub. L. No. 99-650, 100 Stat. 3635 (Nov. 14, 1986), <u>with</u> Pub. L. No. 91-358, 84 Stat. 515 (July 29, 1970) (identical language in original Section 11-1903).  The defense contends that the recodification, standing alone, altered the provision's meaning because the "context completely changed in 1986." Tr. at 17:17.  But a "change of arrangement" in a statute "cannot be regarded as altering the scope and purpose of the enactment" absent Congress's "clearly expressed" intent to "change the[] effect" of the preexisting law.  <u>Fourco Glass Co. v. Transmirra Prods. Corp.</u>, 353 U.S. 222, 227 (1957).  No evidence of congressional intent to alter D.C. grand juries' mutual indictment power exists in either the 1986 Act or its legislative history, and this Court will not "lightly assume that Congress silently attache[d] different meanings" to identical provisions.  <u>Azar v. Allina Health Servs.</u>, 587 U.S. 566, 574 (2019).

10

This Court is convinced that in 1970, Congress authorized local grand juries sitting in the District to return indictments in District Court, and vice versa.  Absent any intervening statutory change, that authority remains today.

### 2.    *Federal Rules of Criminal Procedure*

Stewart hangs his hat, conversely, on a separate statutory scheme: the current Federal Rules of Criminal Procedure, as amended in 2002.  That year — after the D.C. Court of Appeals' decision in <u>Hackney</u>, Section 11-1916(a)'s recodification in 1986, and the D.C. Circuit's opinion in <u>Seals</u> — Congress adopted the Federal Rules Committee's proposed amendments.  <u>See</u> 28 U.S.C. §§ 2072, 2074 (permitting Supreme Court to promulgate rules of procedure, requiring submission to Congress for consideration before effective date); Fed. R. Crim. P. 1 Notes (amended Apr. 29, 2002).  Relevant here, those amendments modified Rule 6(a)(1) to read (as it does today): "When the public interest so requires, the <u>court</u> must order that one or more grand juries be summoned." (emphasis added).  The amendments also defined "court" for the first time in Rule 1(b)(2) as "a federal judge performing functions authorized by law."  And all parties agree that the term "court" does not include D.C. Superior Court.  <u>See</u> Tr. at 4:20–22 (Government agreeing that "plain text" of Rules "exclude[s] D.C. local courts from the definition of court").  The defense thus contends that a D.C. Superior Court grand jury was not convened by a "court" in accordance with the Federal Rules, and any indictment returned by such a grand jury is invalid under those Rules.  <u>See generally</u> Resp. at 10–16.

At first blush, this position makes sense.  The text of the Federal Rules of Criminal Procedure offers a single path to formally charge a defendant with a felony in federal court: via indictment returned by a grand jury, which in turn is convened by a federal (not D.C. Superior) "court."  The Federal Rules, furthermore, "govern the procedure in all criminal proceedings in

11

the United States district courts." Rule 1(a)(1).  Indeed, "one of the central purposes of the Rules

was to make uniform the practices of all the district courts."  <u>United States v. Wallace & Tiernan,

Inc.</u>, 349 F.2d 222, 226 (D.C. Cir. 1965).  It follows that an indictment obtained through a

different path — namely, by a non-federal grand jury — does not comply with the Rules'

strictures, and is thus invalid.  <u>Accord</u> Resp. at 10 ("The Federal Rules require that an indictment

be returned by a grand jury of the <u>federal</u> court.") (formatting altered).  Magistrate Judge Faruqui

adopted this interpretation.  <u>See</u> Order at 5–8.

      The problem with such an approach is that the Advisory Committee Note to the 2002

Amendment characterizes most of the changes to Rule 6 as "stylistic," intended to make the

Rules "more easily understood and to make style and terminology consistent throughout the

rules."  While not dispositive, "Advisory Committee Notes provide a reliable source of insight

into the meaning of a rule, especially when, as here, the rule was enacted precisely as the

Advisory Committee proposed."  <u>United States v. Vonn</u>, 535 U.S. 55, 64 n.6 (2002).  Here, the

notes emphasize several times over that the 2002 amendments were a "general restyling" without

changes in "substance" or "practice" except "as noted" specifically.  <u>See</u> Rule 6, Committee

Notes on Rules — 2002 Amendment.  The note accompanying the newly added definition of

"court" describes the term as "almost always synonymous with the term 'district judge,'" but

clarified to include "magistrate judges" and "circuit judges who may be authorized to hold a

district court."  Rule 1, Committee Notes on Rules — 2002 Amendment.

      Read together, the 2002 Amendment and its Advisory Committee Notes do not alter

preexisting jurisdictional arrangements.  For example, while "court" was not defined in the pre-

2002 Rules, <u>see</u> Rule 54 (2001) (transferred 2002), circuit judges authorized to sit as a district

court certainly fell within the pre-2002 definition of "court," despite subverting the pre-2002

12

"traditional view that 'court' means district judge."  Rule 1, Committee Notes on Rules — 2002 Amendment; see also United States v. Cabrera-Sarmiento, 533 F. Supp. 799 (S.D. Fla. 1982) (circuit judge sitting by designation ruling on motion to dismiss indictment).  The 2002 Amendments are best read as adding clarity without disturbing the status quo.  As previously discussed, that existing status quo included an exception to the Federal Rules of Criminal Procedure for D.C.'s unique grand-jury system.  See supra Section II.B.1; cf. also Cook Cnty. v. United States ex rel. Chandler, 538 U.S. 119, 130 (2003) (when Congress changes statutory context surrounding term, here increasing punitive damages available against a "person," it "does not follow" that the change "has the force to show congressional intent to repeal implicitly the existing definition" of that statutory term).

Accepting the defense's reading also requires a more difficult corollary: that non-substantive, seemingly unrelated amendments to the Federal Rules rendered Section 11-1916(a) meaningless.  The defense originally proposed a statutory interpretation that would harmonize Section 11-1916(a) and the Federal Rules by permitting federal grand juries to return indictments to Superior Court but not the converse.  See Resp. at 28; see also Order at 10 (acknowledging same potential interpretation).  During the hearing before this Court, however, it acknowledged that changes to the D.C. Superior Court Rules of Criminal Procedure — which reflected their federal counterparts and included a complementary definition of "court" that excludes federal judges, see D.C. Sup. Ct. R. Crim. P. 1(d)(3), (5) — would also prohibit a federal grand jury from returning a local indictment.  See generally Tr. at 14:7–15:20.  Such an interpretation of the 2002 Amendment, and its local counterpart, would nullify Section 11-1916(a).

As discussed above, grand juries investigate, indict, and do little else.  To conclude that Congress intended to gut Section 11-1916(a)'s application to one of those two functions

13

(indictment), this Court would require evidence of a "clear and manifest" legislative intention to do so.  Nat'l Ass'n of Home Builders v. Def. of Wildlife, 551 U.S. 644, 663 (2007) (quoting Posadas v. Nat'l City Bank, 296 U.S. 497, 503 (1936)).  Because none exists, this Court will not infer such a repeal.  See also id. (absent "irreconcilable conflict" or clear substitute, "a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum") (internal quotation marks and citations omitted); see also Epic Sys. Corp. v. Lewis, 584 U.S. 497, 510 (2018) (recognizing "strong presumption that repeals by implication are disfavored") (alterations and quotation marks removed).

A final wrinkle concerns the removal of a comment to D.C. Superior Court Rule of Criminal Procedure 6.  Until 2015, the Rule "recognize[d] that a grand jury summoned by the Superior Court may return indictments in either the Superior Court or the United States District Court."  D.C. Sup. Ct. R. Crim. P. 6 comment (2015) (removed 2016).  The Superior Court Rules Committee removed that comment in its 2016 Amendment.  See D.C. Sup. Ct. R. Crim. P. 6 comment (2016).  The defense contends that this change indicates that the Rules Committee understood its own amendment (which mirrored the 2002 Amendment to the Federal Rules) to reflect the post-2002 nullification of Section 11-1916(a).  See Tr. at 14:7–15:20.  Maybe so.  But the Rules Committee did not edit the comment or explain whether it had removed it for purely stylistic reasons or to reflect its altered understanding of the local grand jury's authority.  Even if there were no doubt as to what the Committee understood itself to be doing, that conclusion is not binding on this Court, nor can a change to the comments of D.C. Superior Court Rules overcome a federal statutory provision.

The defense also sounds the alarm about the practical consequences of the Government's position.  As interpreted by this Court, the D.C. Code provision would permit the Government to

14

bring <u>any</u> criminal matter before a local grand jury for indictment, including "a capital case, treason, RICO, sedition," and other crimes thought to be reserved for the federal courts.  <u>See</u> Tr. 7:19–8:18 (Government agreeing "no limit" on "kinds of federal crimes" brought to local grand jury).  What is more, the Government could choose to circumvent the federal grand jury altogether and decide it "will never take a case to a federal grand jury."  <u>Id.</u> at 8:10.  Both of these scenarios are indeed troubling — even if neither has occurred yet — but the remedy would lie with Congress, not this Court, to correct such systematic (if hypothetical) avoidance of the federal grand jury.

## III.    Conclusion

For the reasons discussed above, the Court will order the criminal-duty magistrate judge to accept the indictment in this case.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  <u>November 20, 2025</u>