**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 25-MJ-225 (ZMF)** |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **KEVONTAE STEWART,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

**GOVERNMENT'S MOTION FOR REVOCATION OF DEFENDANT'S RELEASE AND REQUEST THAT THE COURT ISSUE A BENCH WARRANT**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this request that the Court issue a bench warrant for defendant Kevontae Stewart based on his violation of his conditions of release to include leaving his home detention to go to a girlfriend's home, threaten her, and steal her dog, resulting in new First Degree Burglary charges in the Superior Court for the District of Columbia. Further, despite already being on release for a firearms offense, when the defendant's girlfriend went to the defendant's residence after the incident, the defendant took out a firearm and brandished it at her. This violent conduct comes after the defendant was indicted for a separate firearm and drug trafficking offense in Maryland for which he is currently pending trial. The defendant's repeated violent conduct undermines the Court's reasoning in electing to release the defendant. Despite multiple opportunities afforded to him by this Court, the defendant has escalated his conduct to now pointing a gun at an unarmed woman. There are no conditions or combination of conditions of release that can assure the safety of the community and the defendant should be detained.

The government further requests that the Court hold a hearing, pursuant to 18 U.S.C. § 3148(b), after the defendant is arrested and formally revoke his release conditions at the conclusion

of that hearing and order him detained pending trial.

## I. BACKGROUND

### a. Factual and Procedural History

On Wednesday, September 17, 2025 at approximately 2350 hours, Officers were patrolling the Unit block of Forrester Street S.W. when they observed a red Jeep SUV, bearing D.C. tag of JK0513, parked on the side of the street in front of 46 Forrester Street S.W. As officers drove closer to the Jeep, they noticed that it was idling and observed the sole occupant of the vehicle taking a draw from what they recognized as a hand-rolled marijuana cigarette.

Officers exited their vehicle and made contact with the defendant who was occupying the driver's seat of the Jeep. As the defendant rolled down the driver's window, Officers could see that the interior of the vehicle was filled with smoke, and they could smell the odor of burnt marijuana emanating from the vehicle. The defendant was advised that he cannot consume marijuana in public, which he acknowledged, and proceeded to discard the lit marijuana cigarette out of the window and onto the sidewalk.

He was asked to exit the vehicle, and as he stepped out, ATF Agent N. Eltzroth asked Defendant Stewart if he had any weapons on him. The defendant immediately took flight on foot down Forrester Street toward South Capitol Street. Officers pursued the defendant and observed him reaching his arms toward the front of his body, near his beltline area. While some officers pursued the defendant, others remained with the Jeep to secure and preserve any possible evidence.

As MPD Officers Zumbrun and Zambrano chased the defendant, they observed him lose balance while running and fall to the ground, at which point he dropped a black pistol from his right hand. Officers then observed the defendant quickly reach over with his right hand and pick up the weapon, tossing it across South Capitol Street.




***The Defendant Right After Tossing the Firearm***

Officers detained the defendant without further incident and secured the discarded firearm. The firearm information is the following:

Make: Smith and Wesson

Model: M&P 45

Serial Number: HVT1113

Caliber: .45 Auto

Ammunition: 11 total (10 from a 10-round magazine + 1 from the chamber)




***Image of the Firearm on the Ground Where it Was Recovered***



***Image of Firearm in Officer's Hand***



***Image of the Magazine with Ammunition Inside***

The firearm appeared to be fully functional, able to be fired with one hand, had a barrel length less than 12 inches, and capable of expelling a projectile by means of explosion.

Through further investigation, officers learned that the defendant did not have a license to carry a pistol in the District of Columbia and does not have any registered firearms in this jurisdiction. Subsequent DNA testing supported the defendant's possession of the firearm.

During the search incident to arrest of the defendant, Officer Killoran located a clear bag, tied up, containing what appeared to be white rock-like substance in the defendant's left cargo pocket. This substance was later field tested by Officer Killoran and yielded a positive color reaction for cocaine base. The total weight of this substance was 6.47 grams with packaging. The Drug Enforcement Administration later confirmed that the substance was cocaine base. The search incident to arrest also yielded U.S. Currency, in various small-bill denominations, totaling 350.00

U.S. Dollars. A black portable digital scale was also found on the defendant which had white rocky and powdery residue. Lastly, an I-Phone cellphone and a flip-style phone were also found on the defendant's person.

A search of the Jeep that the defendant was occupying yielded a North Carolina driver's license in the center console with the defendant's biographical information and a Samsung phone that was plugged into the vehicle.

The defendant identified himself verbally and his identity was confirmed with law enforcement databases as well as the North Carolina driver's license in the vehicle he was occupying.

A search of the defendant's criminal history revealed in February of 2025, he was sentenced in connection with Maryland case # C-08-CR-17-000209, a case where he has convicted of a crime punishable by more than one year of incarceration, making it unlawful for him to possess firearms. Because he served more than a year in jail, the defendant would have been aware that he was previously convicted of a crime punishable by a term of imprisonment exceeding one year at the time he was possessing the firearm and ammunition.

There are no firearm or ammunition manufacturers in the District of Columbia. Therefore, the ammunition described above necessarily traveled in interstate commerce before they were recovered in the District of Columbia.

The defendant was subsequently charged before this Court. On September 26, 2026, this court released the defendant. Subsequently, in June 2026, while on federal release, the defendant was indicted in Maryland for multiple firearm and drug trafficking offenses in Prince George's Circuit Court case number C-16-CR-26-001077. The court did not revoke the defendant's conditions of release but modified his conditions to reflect home incarceration. ECF 48.

Thereafter, on August 17, 2026, the court further modified the conditions to allow the defendant to leave the confines of his residence only to let out his dogs and to clean up after them between the hours of 7 AM and 10 PM. 08/17/2026 Minute Order. Finally, on September 16, 2026, the court allowed the defendant to leave his residence in order to get a haircut, clothing, and to meet with his Maryland attorney for his upcoming trial in Maryland. 09/16/2026 Minute Order.

On September 21, 2026, the defendant was arrested in connection with a First Degree Burglary that took place on September 7, 2026. According to the sworn affidavit, the defendant kicked down the victim's door and stole her dog, threatening to kill her. (*See* Exhibit A). GPS tracks show the defendant at the victim's residence—despite the fact that he was ordered to stay at his home. The victim reported later going to the parking lot of the defendant's residence after she received threatening calls from an associate of the defendant. (*See* Exhibit B). The victim reported that the defendant came outside and brandished a gun with a green laser sight at her. (*Id.*) Reportedly, when the victim called the defendant thereafter, the defendant threatened to kill her if she got him locked up. (*Id.*)

## II. <u>APPLICABLE LAW</u>

A defendant "who has violated a condition of release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court." 18 U.S.C. § 3148(a). D.C. Circuit precedent permits the Government to proceed by way of proffer at a detention hearing. *See United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996); *see also United States v. LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000) ("proffers are permissible both in the bail determination and bail revocation contexts.").

Section 3148(b) directs a judicial officer to revoke a defendant's release and order detention if, after a hearing, the judicial officer –

(1) finds that there is -

> (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
> (B) clear and convincing evidence that the person has violated any other condition of release; and
>
> (2) finds that –
>
> (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
> (B) the person is unlikely to abide by any condition or combination of conditions of release.

18 U.S.C. § 3148(b).

Section 3148(b) also provides,

> If there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community.

*Id.*

## III. ARGUMENT

### A. There is probable cause that the defendant has committed another offense and clear and convincing evidence that the defendant has violated his conditions of release

The Court strictly ordered the defendant not to leave his home except for purposes of letting out his dog. Instead, the defendant went to the victim's house, kicked down the door and stole her dog. And then, he brandished a firearm at her. GPS tracks place the defendant at his girlfriend's house about .3 miles from his residence, violating his home incarceration. When asked about being at the victim's home he first lied about being there and only made up a story about a flat tire once law enforcement confronted him with his GPS tracks. It further appears that the defendant returned to his residence right before 10 PM, likely trying to take advantage of this court's order that he be allowed to let his dogs out between 7 AM and 10 PM. On September 22, 2026 in 2026

FD3 014921, a magistrate judge in Superior Court has found probable cause for the defendant's charges of First Degree Burglary, Felony Threats, Assault with a Dangerous Weapon, and Possession of a Firearm During a Crime of Violence or Dangerous Crime.

### B. The factors in section 3142(g) support the defendant's detention under section 3142(b)(2)

The four factors that the Court must consider under section 3142(g) are (1) the nature and circumstances of the offense; (2) the weight of the evidence; (3) the history and characteristics of the defendant, including her criminal history, and (4) the nature and seriousness of the danger to any person or the community posed by the defendant's release. 18 U.S.C. § 3142(g). The Section 3142(g) factors all warrant the defendant's detention under 18 U.S.C. § 3148(b)(2)(A) and (B).

#### *i. <u>The Nature and Circumstances of the Offense Weighs in Favor of Detention</u>*

The nature and circumstances of the charged offenses weigh heavily in favor of pretrial detention in this case. The Bail Reform Act explicitly identifies offenses involving firearms or a "controlled substance" as serious in nature. See 18 U.S.C. § 3142(g). The defendant is charged with illegal possession of a loaded firearm where, upon being approached by police, he led them on a foot chase. Despite multiple commands from officers to stop, he continued running and reaching for his waistband, from which he pulled a gun. Not only did he drop the gun, but he picked it back up and then threw it so hard that it landed on the other side of the street. The defendant made the toss right next to a bus station and there were cars passing by right before and after his toss. The firearm in question was recovered with a round in the chamber—ready to fire. It is also worth noting that there were indicia of drug trade both on the defendant and in the car in the form of cocaine, a scale, and cash. Further supporting the seriousness of the offenses charged, if convicted at trial, the defendant faces a lengthy term of incarceration, including statutory maximum term of incarceration of 15 years under a conviction for 922(g)(1).

*ii.* *The Weight of the Evidence Against the Defendant Favors Pretrial Detention*

The weight of the evidence against the defendant also weighs heavily in favor of pretrial detention. The weight of the evidence should be considered equally with the other § 3142 factors. In *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 U.S. Dist. LEXIS 18988, at *29-30. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). Moreover, the Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor. The second factor to be considered, the weight of the evidence, favors detention.[1] The United States's case against the defendant is considerable: multiple officers saw him toss the firearm and body worn camera footage captures the defendant raising his arm as he toss the gun. As this Court has noted, "if the evidence against a defendant is overwhelming, credible, helpful,

[1] While some judges in this Court have indicated that this factor should be given less weight, in *Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, then Chief Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 WL 1778194, at *8. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *United States v. Blackson*, No. 23-CR-25 (BAH), 2023 WL 1778194, at *10 (D.D.C. Feb. 6, 2023), *aff'd*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). Chief Judge Howell's warning in *Blackson* is particularly prescient given the defendant's attempt to flee law enforcement in a motor vehicle while carrying a firearm.

In addition, the evidence has only gotten stronger. DNA results corroborate the defendant's possession of the firearm and results from the Drug Enforcement Administration show that the defendant had cocaine base on him. Accordingly, the strength of the evidence against the defendant also weighs in favor of detention.

*iii.* *The Defendant's History and Characteristics Weigh in Favor of Detention*

This third factor—the history and characteristics of the defendant—heavily favors detention. First, the defendant's Maryland convictions for Burglary and Conspiracy to Commit Burglary shows a degree of planning and forethought when it comes to his decision to put the public in danger. In his Burglary case, the Defendant broke into a CVS with co-conspirators, hauled the ATM out of the store and loaded it into a truck. He then participated in a vehicle chase with police, that lasted eight minutes over several miles, greatly endangering the public. The defendant bailed out of the car and ran, attempting to hide from police inside of a construction site. The damage to the ATM machine and the CVS exceeded $35,000 and the amount of cash in the ATM was in excess of $1,000. The defendant ultimately entered a guilty plea in Maryland, which involved a period of incarceration followed by supervision. Notably, the defendant ultimately failed on supervision and was most recently re-sentenced in February 2025 to 3 days of

incarceration. He also failed in connection with his supervision for his Conspiracy to Commit Burglary conviction, for which probation was terminated in March of this year. And now, he is pending trial in yet another Maryland case for firearm possession and gun trafficking and charged in the District of Columbia with First Degree Burglary and Assault with a Dangerous Weapon.

Also of note, this is not the defendant's first offense involving drugs in a car in that same neighborhood. In 2024 CMD 003622, the defendant was sentenced was convicted of two counts of Possession of a Controlled Substance in D.C. Superior Court. In that case, the defendant had five small zips containing white rock-like and powdery substance in his right jeans pocket as well as an oxycodone pill in the vehicle's driver side door. Despite being given an opportunity on probation in that matter, the defendant committed the instant offense, also involving a vehicle and drugs, less than half a mile from the prior offense.

Further, though not ultimately convicted, the defendant was arrested in Southeast Washington, D.C. in 2017 when officers found a revolver style pistol under his seat in a car, showing that the defendant has a long history with illegal guns.

The fact that the defendant possessed a loaded firearm with a quantity of drugs consistent with distribution and tried to flee from police is very concerning. The fact that he now has chosen to flout this Court's orders by committing further felonies involving guns, not once, but twice mandates detention.

*iv.* *The Danger to the Community Created by Defendant's Release Weighs in Favor of Detention*

The defendant poses an obvious and articulable threat to the community that cannot be mitigated short of pretrial detention. He has shown the Court that whenever he is in the community—even confined to his home—he will arm himself and he will find a way to threaten others. Having GPS monitoring or a third-party custodian has not deterred him. With respect to

the conduct charged in the instant case before the Court, this is not the first time that the defendant was found in that area of D.C. with drugs and indicia of distribution. The defendant has repeatedly shown that he has no qualms about endangering the public in order to evade arrest. In 2017, after brazenly breaking into a CVS and stealing, he led the police on a vehicle pursuit followed by a foot pursuit. Despite having been given an opportunity on probation in Maryland and in D.C., he chose to possess a firearm, run with that firearm, and toss that firearm into a public street. Even though it was late at night, there were still cars driving by right in the area where he tossed a loaded gun. That he was so intent on getting away from police that he would ignore multiple commands and throw a loaded gun shows that the defendant is a risk of flight. His conduct shows an utter disregard for the safety of the bystanders around him, something that has not changed from 2017 until the present, even with multiple felony cases pending. These actions also endangered the defendant, himself, as he had a loaded firearm tucked in his pants while he was sprinting away from officers.

The Court has gone to great lengths to counsel the defendant multiple times since May 2026. This Court has done everything short of detention and still the defendant has managed to obtain guns multiple times and use them either to traffic drugs or to threaten others. At this point, allowing the defendant to remain in the community is a tragedy waiting to happen. This factor, along with the other three factors, weighs in favor of the defendant's detention without bond pending trial to ensure the safety of the community.

## IV. **CONCLUSION**

The government respectfully requests that the Court issue a bench warrant hold a hearing, pursuant to 18 U.S.C. § 3148(b), after the defendant is arrested and formally revoke his release conditions at the conclusion of that hearing and order him detained pending trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
U.S. ATTORNEY

By: /s/ Caelainn Carney
CAELAINN CARNEY
Assistant United States Attorney
N.Y. Bar No. 5751672
601 D Street, N.W.
Washington, D.C. 20530
(202) 714-6433
caelainn.carney@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 25-MJ-225 (ZMF)** |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **KEVONTAE STEWART,** | : | |
| | : | |
| **Defendant.** | : | |
| | | : |

**ORDER**

Upon consideration of the Government's Motion for Revocation of Defendant's Release and Request that the Court Issue a Bench Warrant, it is hereby

ORDERED that the motion is GRANTED; it is further

ORDERED that an arrest warrant shall issue for the defendant; it is further

ORDERED that following the defendant's arrest, the Court will hold a hearing pursuant to 18 U.S.C. § 3148(b).

SO ORDERED this _____ day of September 2026.

______________________________________
THE HONORABLE MATTHEW J. SHARBAUGH
UNITED STATES MAGISTRATE JUDGE